CURLE'S HEIRS AND ADMINISTRATOR., Respondents, v. EDDY *et al.*, Appellants.

1. An oral agreement to the effect that real estate, the title to which had been previously taken as a security, should stand as a security for further advances, is within the statute of frauds and consequently void.

*Appeal from St. Louis Land Court.*

The facts sufficiently appear in the opinion of the court.

*Todd* and *Krum & Harding*, for appellants.

I. Oral evidence is admissible to show that a title to real estate, vested by terms absolute, is nevertheless held as a mere security or in mortgage. (1 Hilliard on Mort. ch. 3, p. 29 and following ; Robertson v. Brant, 16 Mo. 142 ; 1 Wend. 436 and 437 and cases there cited ; Adams' Eq. 111, 112, side pages, and notes.)

II. When it appears that a title to property is taken in the

first instance as a security for a particular debt, if other indebtedness is afterwards created by credits given by the same creditor to the same debtor, oral testimony is not only admissible to show an agreement between the parties that the title to the property may be also held for a security for this indebtedness, but equity will presume such an agreement without express evidence thereof. (15 Mass. 406, 415 ; 2 J. C. 308, 309 ; 5 J. C. 326, 327 ; 6 J. C. 429 ; 7 Cranch, 34 ; 1 Hilliard on Mortgages, 211, 212, 213 ; also see 2 Sandf. Ch. R. 912-13.)

III. The fact that the title is vested in the first instance in more than one person, as a security for a debt in behalf of them all, should not in equity deprive either of them of the benefit of the title as a security for further credits given by one of them alone, or jointly with another, to the debtor. For the best and true reason for the presumption asserted in the last proposition is, that the taking of security in the first instance for the first credit was owing to an unwillingness to credit the debtor without collateral security, and therefore it is not to be supposed that future credits would be given, (the security being still retained,) without a rightful reliance upon the same security for the subsequent credits. Hence, for the like reason, it should not be supposed that one of the parties holding the title would alone, or with another person, give further credits, unless it was understood with the debtor that these subsequent credits should be protected by the security still retained. But when such future credits should be between only one of the parties, holding the title for the first debt, belonging to them all, or such one with others and the debtor, such future credits would only have a right to the security subordinate to the first.

IV. But if the case last supposed could not have the benefit of the *presumption*, yet it would be competent for these new creditors and the debtor to *agree* with the holders of the title, that the title might continue to be held by them as a security for these subsequent credits. Of this there can be no question ; for as the debtor (if he had the title in himself) could convey

it to secure such subsequent credits, he could agree, effectually, that the title, already vested in one of these new creditors and another person, he not objecting, but agreeing to it, might be held and retained as a security for these new credits, and such an agreement could be proved by parol, as already shown ; and this is exactly the case made by the answer, and which the court below struck out. The court will observe in this case that the title was vested in these defendants by an absolute deed at the time Curle made the verbal agreement that they should hold it as security for credits given to Curle by Beach & Eddy. (Adams' Eq. 123, 124, 125, side pages.)

V. A party who seeks equity must do equity. This case presents itself as if it were between Curle himself and the defendants. It expressly alleges that the credits, to secure the payment of which the property is sought to be retained, were given, not only upon a reliance upon this property as a security therefor, but under the faith and confidence of an express agreement with Curle that it should be held as a security therefor. How, then, can equity aid in taking it away and giving it to Curle without a satisfaction of these credits ? Such an act would not be *equity*, but *iniquity*. (15 Mass., before cited.)

*Glover & Richardson* and *J. E. Munford*, for respondents.

RYLAND, Judge, delivered the opinion of the court.

This is a suit by the heirs and administrator of Richmond J. Curle, deceased, against Joseph A. Eddy and another, to compel the defendants to convey to them title to a certain tract of land described in the petition, pursuant to their written agreement to that effect, upon the payment of certain moneys specified in the agreement.

The defendants answer and state that they and Richmond J. Curle made a joint purchase of the land, and that Curle, not being in funds, it was agreed that the defendants should advance

the purchase money ; that the title for Curle's interest should be conveyed to them as a security for the money advanced, and it was so conveyed under this oral contract ; and that, at the same time, it was further orally agreed that the defendants should advance for Curle the money to pay taxes, costs, &c., and hold the title in security for these advances ; which they aver they made, and which amount to $667. The answer also states that after the title was conveyed to the defendants, it was agreed orally between said Curle and John Scott, and Beach & Eddy and these defendants, that Beach & Eddy should advance to Curle and Scott goods, wares and merchandise for the purpose of carrying on their coal adventure ; and that Curle proposed to Beach & Eddy and these defendants, that these defendants should hold the title of said Curle's part of the land, already conveyed to them, until the money or goods advanced to Curle & Scott by Beach & Eddy should be repaid to them ; that Beach & Eddy advanced to Curle & Scott goods, wares and merchandise to a large amount; that Beach & Eddy sued the administrators of Curle and recovered judgment for a large amount— upwards of $8400—and that this judgment is not satisfied, but the money is still due to the said Beach & Eddy— said Eddy being one of the defendants to this suit. The answer avers that said Curle always, up to the time of his death, verbally recognized and acknowledged the right of these defendants to hold the title to his share of said land until said advances were paid. The answer avers that Richmond J. Curle did not in his lifetime fully pay and reimburse to these defendants the sum of $2500, advanced by them for him, in order to pay the purchase money for the land. They say that there is justly due to these defendants the amount of money specified in the judgment in favor of Beach & Eddy, and also the amount for advances and costs and services rendered, amounting to $1100 or $1200.

The court struck out that part of the answer in relation to the advances made by Beach & Eddy to Curle & Scott.

There was a hearing and finding of facts—no verbal agree-

ment found—no finding as to the manner of acquiring the title by the defendants, except what appears from the writing. The court decreed title to be made upon the payment of $967, the amount allowed to defendants for advances and services, and from this part of the decree the plaintiffs bring the case here by writ of error ; and the defendants bring it here by appeal, because the court refused to allow the matters set up in the answer in regard to the agreement verbally made by Curle to the defendants to hold the land subject to the advances made by Beach & Eddy to Curle & Scott. The defendants contend that these advances were by agreement to be charges on the land, and that they are not bound in equity to convey unless these sums be first paid back. The agreement is as follows : " Whereas we have this day received from Richard F. Barrett a bond for a deed for the undivided half of forty arpens of land purchased of Dominike Burthe and others, dated 10th of July, 1847 ; and whereas Richmond J. Curle is the owner of one-third of said land conveyed by said Barrett, we bind ourselves, after the payment by said Curle, of one note of $500, and one note of $2000, given to Joseph A. & J. P. Eddy, and *any other liabilities of said Curle to us*, to convey to him his interest of one-third of the above land. St. Louis, Mo., July 12, 1847. [Signed] J. A. & J. P. Eddy."

There are no verbal agreements found to exist between the parties. We suppose the act of the court below, cutting out, on motion, the defendant's claim to hold the land until the money, goods, wares and merchandise advanced to Curle & Scott should be refunded, rendered no finding necessary as to any agreement on that matter. The $2500 were found to have been paid by Curle in his lifetime to the defendants. The main questions then in this case involve the correctness of the rulings of the lower court in regard to allowing the claim for taxes, fencing the land and other costs accruing on account of the land, and the allowance for services of the defendants in attending to this matter. These are the subjects on the rulings in regard to which the plaintiffs complain.

The other party complain of the rulings cutting out their

Curle's Heirs v. Eddy.

rights to hold the title subject to advances made by Beach & Eddy to Curle & Scott.

So far as regards the plaintiffs' objections, we think that the agreement to convey gives the right to demand that the taxes, costs in defending title, fees in relation to the land, enclosures, &c., should be paid by Curle in his proper proportion to the defendants before he can demand the conveyance to be made to him. But so far as regards the services in attending to this business we entertain great doubts of the propriety of such claim; but as the record shows that the plaintiffs were willing to admit $300 of these services, we will not reverse for allowing to them that amount. The words "and any other liabilities of said Curle to us" may be fairly understood to embrace all proper liabilities incurred by them in regard to the subject matter of the contract. They did not know what these might be; therefore, under this expression, the payment of money by the defendants, as specified in the account presented by them, might properly form a debt from Curle to them. It becomes a liability resting on Curle which must be discharged before he can require the title to be conveyed to him. We see no reason, therefore, to reverse the judgment below for any thing alleged by the plaintiffs in their writ of error.

The defendants contend that, by the parol agreement by Curle and themselves, the advances made by Beach & Eddy to Curle & Scott became liens on the land of Curle, and that the court below should have required by its decree that this sum should be paid out of the land before the defendants can be equitably or legally required to convey. They say it is of the nature of a mortgage, at least an equitable mortgage, and that by the title remaining in the hands of defendants, taken in their name at first, they being the legal owners of the land, any advances made by Beach & Eddy to Curle & Scott are in law presumed to be made on this land, looking with an eye to this land as a means of payment in future.

By our statute, no action shall be brought upon any contract for the sale of lands, tenements, hereditaments, or any other

interest in or concerning them, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party charged therewith, or some other person by him lawfully thereto authorized. Now, in the opinion of this court, the verbal agreement between Curle and these defendants to hold the land subject to the advances to be made by Beach & Eddy to Curle & Scott is within the provisions of this statute, and therefore not binding. Consequently it was proper in the court below to strike out so much of the defence as rested on this agreement.

There is much learning on the subject of mortgages to secure future liabilities. But it seems that the mortgage for this purpose must express the object. The assistant vice chancellor, in the case of Walker v. Snediker et al., (1 Hoffman, 146,) said, "It had been settled in equity by repeated decisions, that a mortgage, to secure future as well as present responsibilities, is good; but the better opinion, if not decided law, is, that the mortgage must express the object. It is certain that it can not be rendered available for future liability by a subsequent parol agreement." In Jarvis v. Rogers, (15 Mass. 392,) Parker, C. J., said: "I admit that by the principles of the civil law, as they have been applied to mortgages, if the debtor pledges property for the security of a debt, and afterwards another debt is contracted to the same party, the creditor may retain until both debts are paid, provided no other security is given and no stipulation is made with respect to the second debt, tending to negative the presumption of an implied contract that the pledge should be so retained. But this doctrine, I believe, is founded upon the presumption of such contract, and where there is no original contract to pledge, there can be no presumption with respect to a subsequent debt." Ch. Justice Sharkey, in Williams v. Strattan, (10 Smed. & Mar. 426,) said: "A deposit of all the title deeds, as a security for a debt created *at the time* the deposit is made, is generally recognized as constituting an equitable mortgage. Such equitable liens have met with very decided opposition in England, though they have been generally

sustained; but it is admitted on all hands that they should not be extended beyond their present limit. Such a mortgage is in direct opposition to the statute of frauds, in regard to which we have said that we will create no exceptions not found in the statute. Lord Eldon said, in departing from the rule of the statute, there is no rule to go by, and it was essential that those who wished to render such securities valid should learn the utility of requiring two or three lines in writing." In Shirtz v. Deiffenbach, (3 Barr, 234,) it was held that there could be no such thing as a parol mortgage of lands in Pennsylvania. (Bowers v. Oyster, 3 Penn. 239.) The court of appeals of Kentucky, in Vanmeter v. McFadden, (8 B. Mon. 437,) said: "We are strongly inclined to the opinion that the mere deposit of title deeds should not be regarded in this state as constituting any lien upon real estate. If permitted to have this effect, an interest in landed property is created by the contract of the parties not reduced to writing in direct violation of the statute of frauds. Under our registry laws, the mere possession of the title deeds is of no real importance to the owner of the estate. He can procure office copies and use them without accounting for the absence of the original deeds, and that necessity which gave rise to this doctrine of implied or equitable lien having no existence here, the doctrine itself would be difficult to be maintained either upon the ground of principle or of public policy." Lord Elden said, in *ex parte* Hooper, (19 Vesey, 480,) that "there never was a case where a man having taken a mortgage by legal conveyance, was afterwards permitted to hold that estate, as further charged, not by legal contract, but by inference from the possession of the deed." The same chancellor said, in *ex parte* Whitbread, (19 Vesey, 210,) "Upon this subject I must always protest that the doctrine now prevailing ought never to have been established. The law previously was, that, if there was a clear mortgage and a subsequent advancement, the latter could not be added without writing. When that was once determined, how could it be said that these deposits should have this effect?"

Without deciding whether there can be an equitable mortgage under our system of law or not, the court is fully satisfied that the parol contract—set up in this case by the defendants in order to make the future advances to Curle & Scott operate as an equitable lien or mortgage on the land of Curle, the title of which was then in the defendants—is void, being contrary to the statute of frauds and perjuries.

Upon this contract, then, which was contrary to the statute, the defendants can not insist on tacking their debt against Curle & Scott to the amount of the purchase money originally advanced by them for Curle, and which has been paid back, and require this debt to be paid before they convey according to their written agreement. This view settles both cases, affirming the judgment below in all things; this court allowing the same time as the court below did. The plaintiffs must pay the costs of the case brought here on error, and the defendants the costs of the case brought here by them on appeal. The record in this case will be remitted to the court below, with instructions to carry into execution the decree which was made by that court, allowing to the parties the same time to perform their respective parts as decreed, counting from this day.