## SANDS *v.* THOMPSON.

STATUTE OF FRAUDS.—*Parol Agreement for Purchase of Real Estate.*—*Part Performance.*—Where A. and B. made a parol agreement with each other, that if B. would exchange certain of his real estate for certain real estate owned by C. and convey the real estate procured of C. to A., A. would pay to B. a certain price for the same;

*Held,* that the agreement was within the statute of frauds, and B. could not compel the performance of the contract by tendering a deed to A. for the real estate procured of C. and enforce the payment of the purchase-money.

*Held,* also (on petition for a rehearing), that the exchange by B. of his property for the real estate of C. was not a part performance of the contract between A. and B., so as to take the case out of the statute of frauds. *Eastburn* v. *Wheeler*, 23 Ind. 305, overruled.

From the Wayne Common Pleas.

*W. A. Bickle*, for appellant.

*J. P. Siddall*, for appellee.

WORDEN, J.—This was an action by the appellee against the appellant and three others.   The complaint was as follows:

"William M. Thompson complains of Joseph Kelly, David Sands, George W. Barnes, and Edward W. Yarring-

ton, and says that on the 24th of August, 1869, Eunice Moffitt was the owner in fee of the following described real estate, to wit:" (Here follows a description of the land alleged to have been owned by Eunice Moffitt.) " That the defendants had entered into a partnership among themselves, for the purpose of buying, slaughtering, and packing hogs, and desired to have the above described property on which to erect buildings and carry on said business, and wished to purchase the same for that purpose, and were willing to pay therefor the sum of twenty-seven hundred dollars, being the value thereof; but they had doubts whether the said Eunice might not be dissuaded by the owners of adjacent property from selling said property to them to be used in the said business, if it were known that they desired to purchase it. Therefore it was agreed among the defendants, that they would procure the plaintiff to purchase said property for them, and, to avoid any suspicion as to their interest in the same, that he should have the conveyance made to himself, and should subsequently, on demand, convey the same to the defendants. The plaintiff was the owner in fee of lot 20 in Bickle and Law's addition to the city of Richmond, Indiana, which, with the improvements thereon, was of the value of twenty-seven hundred dollars; and, further to avoid exciting any suspicion or inquiry as to the purpose of the plaintiff in buying said property, it was agreed between said defendants that the plaintiff should exchange his said property to the said Eunice for the property first above described, and that the defendants, on the completion of said exchange, would pay the plaintiff the sum of twenty-seven hundred dollars, for the conveyance of his property to the said Eunice. These propositions and agreements were communicated to the plaintiff by the defendants, and he agreed to the same, and in pursuance thereof conveyed his said property to said Eunice, and in exchange therefor received of said Eunice a conveyance of her said real estate; said conveyance being executed on August 24th, 1869. Thereupon the plaintiff demanded of defendants the said sum of twenty-

seven hundred dollars, but the defendants declined to pay the same for the present, for the reasons following: It was proposed that said partnership be dissolved, said Sands and Kelly proposing to buy the packing and slaughtering house of James McWhinney; and Barnes and Yarrington being unwilling to do so, Sands and Kelly entered into a partnership with Benjamin L. Martin, and made the purchase of McWhinney, and they, not then needing the Moffitt property, proposed that Barnes and Yarrington take it, which they were unwilling to do, unless they could get up another satisfactory firm; and failing in their efforts to do this, they declined to take the whole of said property. The plaintiff was requested by defendants not to execute any deed until it was ascertained whether these arrangements would be consummated, and if they were, they wished him to make the deed to the new firm, who would pay for the property. The plaintiff complied with the request of the defendants and waited on their action until the 21st of March, 1870, when he executed and tendered a deed for said real estate first above described, to the defendants, and again demanded the twenty-seven hundred dollars, and the interest thereon due him, which deed is herewith filed for the use of the defendants, and marked 'Exhibit A.' The defendants declined to accept said deed or pay said twenty-seven hundred dollars, which sum, with interest thereon from August 24th, 1869, is due to plaintiff and remains wholly unpaid; wherefore," etc.

Yarrington's death was suggested pending the action. Barnes made default; Kelly and Sands demurred to the complaint for want of a statement of sufficient facts, but the demurrer was overruled, and they excepted. They then answered: 1. General denial. 2. That the contract was not reduced to writing. Demurrer to second paragraph sustained, and exception. Issue tried by the court; finding in favor of Kelly, but in favor of the plaintiff as against Sands. Motion by Sands for a new trial overruled, and exception. Final judgment for plaintiff against Sands and Barnes.

Sands *v.* Thompson.

Barnes, in a note endorsed upon the transcript, declines to join in the appeal, and consents that his name be stricken from the record.

The first question that is presented by the record and assignment of error arises upon the ruling below in over-ruling the demurrer to the complaint.

If the contract set up therein is within the statute of frauds, and, therefore, not the foundation of an action unless reduced to writing, the complaint should have shown that it was thus reduced to writing. *Harper* v. *Miller*, 27 Ind. 277.

Our present statute provides, that "no action shall be brought * * * upon any contract for the sale of lands; ·* * * unless the promise, contract or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized; excepting, however, leases not exceeding the term of three years." 1 G. & H. 348, sec. 1.

The substance of the agreement stated in the complaint, stripped of extraneous circumstances, is this: The defendants desiring to purchase the Moffitt property, for which they were willing to pay twenty-seven hundred dollars, and the plaintiff having property which he was willing to sell for that amount, it was agreed between the plaintiff and the defendants, that if the plaintiff would exchange his property for the Moffitt property and convey the latter to the defendants, they would pay him the twenty-seven hundred dollars.

This, as it appears to us, is clearly a "contract for the sale of lands," and furnishes no foundation for an action, not having been executed in the manner required by the statute. It is claimed by the counsel for the appellee that he was acting as the agent of the defendants throughout the transaction. We are not of that opinion. He seems to us to have been acting for himself and for his own benefit. It is difficult to see how he could have been acting as the agent of the defendants when making a contract with them on his own behalf. He seems to have been willing to aid the

defendants in accomplishing their desire to acquire the Moffitt property, thereby effecting a sale of his own. If it was not commendable in the defendants to resort to the circuitous method adopted, of acquiring the Moffitt property, it was no more so in the plaintiff to aid them in doing so, though he thereby accomplished a purpose of his own. The circumstances, it would seem, should have suggested to the plaintiff the propriety of having his contract reduced to writing, in order that it might be enforced, if necessary, without any dispute as to its terms.

The case is not one where there has been a complete performance on one side. The defendants have not accepted the deed. Had they done so, they would, doubtless, have been liable. Says Mr. PARSONS: "When a contract, originally within this clause of the statute, has been executed, and nothing remains to be done but payment of the consideration, this may be recovered notwithstanding the statute. But in such case the declaration should be framed, not upon the original contract, but upon the contract implied by law from the plaintiff's performance." 3 Pars. Con., 5 ed., p. 35. See, also, *Fisher* v. *Wilson*, 18 Ind. 133; *Thomas* v. *Dickinson*, 12 N. Y. 364.

In the case last cited, JOHNSON, J., in delivering his opinion, says: "When, therefore, the last conveyance required by the contract was made, its execution and acceptance were equivalent to a re-adoption by the parties of the remaining unperformed terms of the original agreement. It thereby ceased to be a contract for the sale of lands or an interest in lands and became a mere agreement to pay for lands conveyed. As such it was not within the statute of frauds. A promise to pay for land conveyed is not within the statute and needs not to be in writing."

The plaintiff, to be sure, tendered a deed for the property which he was to procure from Eunice Moffitt and convey to the defendants, but such tender does not entitle him to enforce the contract. *Hadden* v. *Johnson*, 7 Ind. 394. It is

Sands *v.* Thompson.

the acceptance of the deed, in such case, that lays the foundation for liability.

We are of opinion, therefore, that the court erred in overruling the demurrer to the complaint.

The judgment below, as to the appellant, is reversed, with costs, and the cause remanded.

### ON PETITION FOR A REHEARING.

WORDEN, J.—The appellee has filed an earnest petition for a rehearing in this case, and we have again considered the question involved, with such care as, from its importance, it seemed to demand. He has cited, and relies upon, the case of *Eastburn* v. *Wheeler*, 23 Ind. 305, to show that the alleged acts of part performance take the case out of the statute of frauds. The case in 23 Ind., not having been cited in either of the original briefs of the parties, was overlooked by the court in the original consideration of the cause.

That case was as follows: A. filed a complaint against B. to foreclose a mortgage executed by the latter to the former. B. filed a cross complaint, alleging, in substance, that a third party was desirous of purchasing some real estate of him, but wished him to take in part payment therefor a lot in Lafayette at three hundred dollars, and had made him an offer accordingly. This B. declined, and thereupon A., who was informed of the facts, agreed with B. that if the latter would accept the offer thus made and take the Lafayette lot at the price named, he, A., would take the lot of B. at the same price, and credit B. with the amount on the mortgage. B., thereupon, accepted the offer that had been thus made to him by the third party, took a conveyance of the Lafayette lot, and tendered a deed therefor to A., and demanded the credit on the mortgage, which was refused. It was held that the alleged acts of part performance took the case out of the statute of frauds.

Without undertaking to determine whether the decision

in the above case might not have been placed upon different ground, we may observe that it cannot, in our opinion, be upheld upon the ground upon which it is placed.   We have examined the case of *Chambers* v. *Lecompte*, 9 Mo. 575, much like that of *Eastburn* v. *Wheeler*, and disapproved in the latter case, and it seems to us to have been correctly decided.   The authors of Leading Cases in Eq., vol. 1, p. 736, in speaking of the Missouri case, say: "There can be little doubt of the soundness of this decision, because to take a contract for the sale or conveyance of land out of the statute by performance, the performance must be on or about the land in question, and be so far founded upon the contract, that it would be wrongful had no contract been made.   Hence, an oral agreement between the owners of two adjacent lots, that each will build upon the same line a certain number of feet back from the street, will not be rendered binding by the erection of a building on one of the lots, in compliance with the agreement, because this might obviously have been done, had no agreement been made, and consequently cannot show that an agreement exists."   *Wolfe* v. *Frost*, 4 Sandf. Ch. 72.

In the case cited from Sandford, the court say: "In order to make the acts such as a court of equity will deem part performance of an agreement within the statute, it is essential that they should clearly appear to have been done solely with a view to the agreement being performed.   If they are acts which might have been done with other views, they will not take the case out of the statute, since they cannot properly be said to be done by way of part performance of the agreement."

The tendency of modern decisions is to restrict the doctrine to the limits established, rather than to extend it. Thus, in the case of *Phillips* v. *Thompson*, 1 Johns. Ch. 131–46, it was said by KENT, Chancellor: "This case, like many others, shows the utility of the statute of frauds, and the danger of relaxing the sanction of its provisions.   I agree with those wise and learned judges, who have declared

that the courts ought to make a stand against any further encroachment upon the statute, and not go one step beyond the rules and precedents already established."

We quote, on the subject of part performance, the following paragraph from Browne on the Statute of Frauds, secs. 455, 457:

"Vice-Chancellor Sir Lancelot SHADWELL says: 'It is in general of the essence of such an act that the court shall by reason of the act itself, without knowing whether there was an agreement or not, find the parties unequivocally in a position different from that which, according to their legal rights, they would be in if there were no contract. Of this a common example is the delivery of possession. One man, without being amenable to a charge of trespass, is found in the possession of another man's land. Such a state of things is considered as showing unequivocally that some contract has taken place between the litigant parties. And it has, therefore, on that specific ground been admitted to be an act of part performance. But an act which, though in truth done in pursuance of a contract, admits of explanation without supposing a contract, is not in general admitted to constitute an act of part performance to take the case out of the Statute of Frauds; as, for example, the payment of a sum of money, alleged to be purchase-money. The fraud, in a moral point of view, may be as great in one case as in the other, but in the latter case the court does not in general grant relief.'

"Another rule, and the last which seems to require notice as laid down upon this subject, is that the acts of part performance must have been done in execution of the contract, or, as Mr. Roberts well expresses it, 'must appear to be done with a direct view to perform the agreement, and tend inceptively toward its accomplishment.' This rule seems to be suggested by the very words, 'part performance;' and if it did not prevail, and any act, however disconnected with the agreement, which a plaintiff might proceed to do upon the faith of the agreement, were to be regarded as a reason for

the interposition of equity, because prejudicial to him, known to the defendant, and incapable of adequate compensation in damages, the inconvenience would be serious and manifest. Great danger of fraud and perjury would be incurred in admitting proof that the plaintiff had in fact been induced by the agreement to do the acts relied upon; and, more-over, the important characteristic of an act of part perform-ance, that it shows of itself an agreement of some sort concluded between the parties, could scarcely be said to exist to such a case."

We make a quotation from another author: "In order to make the acts such as a court of equity will deem part performance of an agreement within the statute, it is essen-tial that they should clearly appear to be done solely with a view to the agreement being performed. For, if they are acts which might have been done with other views, they will not take the case out of the statute, since they cannot prop-erly be said to be done by way of part performance of the agreement. On this account, acts, merely introductory or ancillary to an agreement, are not considered as a part per-formance thereof, although they should be attended with expense. Therefore, delivering an abstract of title, giving directions for conveyances, going to view the estate, fixing upon an appraiser to value stock, making valuations, admeas-uring the lands, registering conveyances, and acts of the like nature, are not sufficient to take a case out of the statute. They are all preliminary proceedings, and are, besides, of an equivocal character, and capable of a double interpretation: whereas acts, to be deemed a part performance, should be so clear, certain, and definite in their object and design, as to refer exclusively to a complete and perfect agreement, of which they are a part execution." 1 Story Eq., sec. 762.

In *Johnston* v. *Glancy*, 4 Blackf. 94, the court say: "But even these acts of part performance must be done with a direct view of the agreement being performed, and be such acts as could be done with no other view, or the agreement will not be taken out of the statute."

Sands *v.* Thompson.

These principles are elementary, and are sustained by the adjudged cases, so far as we have had leisure to examine them.

Tested by these principles, it is clear that Thompson has done no act of part performance, such as will take the case out of the statute. He has made his exchange with Eunice Moffitt, and has procured from her the title to the land. But from this act it cannot be inferred that there was any contract whatever between him and the defendants. The act which he has performed is equivocal, and admits of ample explanation without supposing any contract of any kind whatever with any one else than with her. He may have made the exchange with her without intending, in any manner, to perform the contract between himself and the defendants, and with the purpose of disposing of the property in a totally different manner.

If the authorities, which we have quoted at perhaps unusual length, are not wholly at fault in the statement of legal principles, the supposed acts of part performance on the part of the appellee cannot take the case out of the statute of frauds.

It is sometimes said that equity will not permit a suitor to make use of the statute against frauds as a means of perpetrating fraud, for the reason that to do so would be to defeat the very purpose for which the statute was enacted. This may be illustrated by what was said in the case of *Clinan* v. *Cooke*, 1 Sch. & Lef. 22, 41. The Lord CHANCELLOR says: "But I take another reason also to prevail on the subject. I take it that nothing is considered as a part performance which does not put the party into a situation that is a fraud upon him, unless the agreement is performed; for instance, if upon a parol agreement, a man is admitted into possession, he is made a trespasser, and is liable to answer as a trespasser if there be no agreement. This is put strongly in the case of *Foxcraft* v. *Lister;* there the party was let into possession on a parol agreement, and it was said that he ought not to be liable as a wrong-doer, and to

account for the rents and profits, and why? because he entered in pursuance of an agreement. Then for the purpose of defending himself against a charge which might otherwise be made against him, such evidence was admissible, and if it was admissible for such purpose, there is no reason why it should not be admissible throughout. That, I apprehend, is the ground on which courts of equity have proceeded, in permitting part performance of an agreement to be a ground for avoiding the statute; and I take it therefore that nothing is to be considered as part performance which is not of that nature. Payment of money is not part performance, for it may be repaid; and then the parties will be just where they were before, especially if repaid with interest. It does not put a man who has parted with his money into the situation of a man against whom an action may be brought; for in the case of *Foxcraft* v. *Lister*, which first led the way, if the party could not have produced in evidence the parol agreement, he might have been liable in damages to an immense extent."

On this subject we venture, at the risk of some prolixity, to make another extract from Browne on the Statute of Frauds, sec. 439: "The fraud against which equity will relieve, notwithstanding the statute, is not the mere moral wrong of repudiating a contract actually entered into, but which, by reason of the statute, a party is not bound to perform for want of its being in writing. This was early laid down by Lord MACCLESFIELD, Chancellor, in a case arising upon a promise of a defendant, about to marry, that his wife should enjoy all her own estate, to her separate use after the marriage, which promise, as one made 'upon consideration of marriage,' could not regularly be enforced. His Lordship declared that, 'in cases of fraud equity should relieve, even against the words of the statute, as if an agreement in writing should be proposed and drawn and another fraudulently and secretly brought in and executed in lieu of the former; in this or such like cases of fraud, equity would relieve; but where there was no fraud, only relying upon

the honor, word, or promise of the defendant, the statute making those promises void, equity will not interfere.' "

In the case under consideration the appellant is charged with no fraud except the failure or refusal to comply with his contract. This is not such a fraud as entitles the appellee to any relief.

We have not examined as to whether the appellee has any other remedy than an action upon the contract, but upon this point we have been referred by counsel for the appellant to the following authorities: *Thomas* v. *Dickinson,* 14 Barb. 90; *King* v. *Brown,* 2 Hill N. Y. 485; *Kidder* v. *Hunt,* 1 Pick. 328.

The petition for a rehearing is overruled.