# IRWIN, ADM'R, ET AL. *v.* HUBBARD.

STATUTE OF FRAUDS.—*Parol Agreement to Change Mortgage.*—A parol agreement between a mortgagor and mortgagee and a third person that an indemnifying mortgage of real estate held by the mortgagee should be changed by inserting therein a provision that such third person should also be indemnified, as surety for the mortgagor, was equivalent to an agree-

Irwin, Adm'r, *et al. v.* Hubbard.

ment to execute a new mortgage, and was within the statute of frauds, and could not be enforced by such third person.

SAME.—*Part Performance.*—*Fraud.*—The fact that such third person, in consideration of the promise to so change the mortgage, signed a bond as surety for the mortgagor, was not such a part performance of the agreement, nor was the refusal on the part of the mortgagor to change the mortgage such a fraud, as to take the case out of the statute of frauds.

From the Bartholomew Circuit Court.

*S. Stansifer,* for appellants.

*R. Hill* and *J. W. Morgan,* for appellee.

WORDEN, J.—The original action in this case was commenced by William W. Herod against the appellants herein, who, except Irwin, were the heirs at law of Milton Treadway, deceased. The action was brought to foreclose a mortgage on certain real estate, which the deceased in his lifetime had executed to Herod, to indemnify and save him harmless from a liability which he had incurred by executing a certain promissory note, as the surety of the deceased, to one Joseph D. Sidener.

The appellee, Hubbard, on his petition, was made a party to the action, and filed his cross complaint as follows, viz.:

" Charles A. Hubbard, having heretofore been by leave of the court admitted as a party defendant herein, for his answer and cross complaint herein says that after the execution and delivery of said mortgage to plaintiff, one Kendall M. Hord instituted an action against said Milton Treadway before one George W. Arnold, a justice of the peace of said county, wherein such proceedings were had that, on the 24th day of February, 1873, said Hord obtained judgment against said Treadway for the sum of one hundred and seventy-seven dollars and sixty-two cents, together with costs, taxed at two dollars and forty-five cents, from which judgment said Treadway, being desirous of taking an appeal to this court, applied to said Hubbard to become his surety on an appeal bond, for the purpose of so appealing from said judgment as aforesaid, and informed said Hubbard that said Herod held the mortgage now sued on, and that the property covered by said mortgage

was amply sufficient to secure the sum for which said Herod had taken the same, and also the liability which said Hubbard would incur by becoming surety on said appeal bond, and that if said Hubbard would become surety on said appeal bond, he would arrange with said Herod that said mortgage should be so changed that said Hubbard should be included therein; and by the terms thereof, as so changed, said Hubbard should be fully indemnified for any loss he might sustain by reason of becoming surety on said appeal bond, as aforesaid. And thereupon said Hubbard and said Treadway went together to said Herod, and it was then and there mutually agreed between said Herod, said Hubbard, and said Treadway, that said mortgage should be so changed as to insert therein a provision that said Hubbard should be indemnified for and on account of any loss or damage that said Hubbard might sustain by reason of said appeal bond and his connection therewith; and that such verbal changes should be made in said mortgage as would be necessary and proper to set forth the said security and indemnity of said Hubbard by said mortgage, in fit and appropriate language; and said Herod being learned in the law, at the earnest solicitations and request of both said Treadway and said Hubbard, undertook and promised to make such changes in said mortgage immediately thereafter as would set forth said security; and said Hubbard, relying upon said promises and believing that said change had been or immediately would be made in said mortgage, executed said appeal bond pursuant to said request of said Treadway, and said cause was appealed to this court, where judgment was finally rendered in said action in favor of said Hord, for ——dollars and costs, taxed at —— dollars; and by reason of his said suretyship on said bond, said Hubbard was compelled to and did pay the sum of two hundred and ten dollars and forty cents. Said Hubbard avers that said Treadway departed this life on the — day of —, 1873, and that said Irwin is administrator of his estate, and that the other defendants herein are heirs at law of said Treadway, and that the estate of said Treadway is wholly insolvent; wherefore said Hubbard prays that

said mortgage be so reformed as to set forth said agreement of said parties in regard to the indemnity of said Hubbard as aforesaid, and that said mortgage when so reformed be foreclosed, and that said premises be sold to satisfy the indebtedness of said Herod and said Hubbard, or such *pro rata* part thereof as the proceeds of such sale may amount to, if insufficient to satisfy the whole of both said claims, and for all other proper relief."

To this cross complaint the administrator demurred for want of sufficient facts, but the demurrer was overruled, and an exception was taken. Such further proceedings were had as that the mortgage was foreclosed in favor of Herod, the original plaintiff, and changed in favor of Hubbard, in accordance with the agreement alleged in the cross complaint, and foreclosed in his favor, giving Herod priority. Herod, therefore, has no interest in this appeal.

The administrator assigns for error the overruling of his demurrer to the cross complaint, and the heirs that the cross complaint does not state facts sufficient, etc. Thus the sufficiency of the cross complaint of Hubbard is questioned here.

The agreement to so change the mortgage which Herod held against Treadway as to render it a security in favor of Hubbard, to indemnify him against the liability he was about to incur by entering into the appeal bond was, so far as the statute of frauds is concerned, equivalent to an agreement to execute a new mortgage. That the agreement was within the statute of frauds, we think, admits of but little controversy. Browne Stat. Frauds, sec. 267. The author, at the section cited, says: "Not only is an agreement to execute a mortgage invalid without writing, but also an agreement to make a defeasance to an absolute conveyance, or to convert a written mortgage into a conditional sale."

In the case of *Clabaugh* v. *Byerly,* 7 Gill, 354, it was held, that "a mere parol agreement to execute a mortgage is one of which a court of chancery can take no notice, and, of course, cannot regard it as performed."

In 3 Powell Mort. 1050c, it is said: "To put a case of pure oral contract—if A. agree with B. in presence of their common solicitor, to make a mortgage for a sum which B. advances, or for a debt due from A. to B., and A. delivers to the solicitor title deeds to assist him in preparing the mortgage, which is prepared accordingly, yet A. may resist specific performance of his contract, and B. will have no relief in equity."

In *Curle's Heirs v. Eddy*, 24 Mo. 117, it was held, that an oral agreement to the effect that real estate, the title to which had been previously taken as a security, should stand as a security for further advances, is within the statute of frauds and consequently void.

So, in *Castro v. Illies*, 13 Texas, 229, it was held, that a parol agreement that certain real estate should be substituted in a mortgage for certain other real estate described therein is void under the statute of frauds. See, also, *Williams v. Hill*, 19 How. 246, 250.

We do not understand that counsel for the appellee insist that the contract is not within the statute; but they insist that it has been so far part performed as to be taken out by a court of equity, and that the non-performance is such a moral fraud that a court of equity will not permit the appellants to take advantage of the statute. We are not able to see any legal fraud in the case. Treadway failed, perhaps we may say refused, to comply with his contract. If that is such a fraud as would prevent him or his heirs from taking advantage of the statute, the statute itself, in respect to this class of contracts, becomes a dead letter.

Hubbard, doubtless, executed the appeal bond on the faith of the agreement that the mortgage should be so changed as to furnish him indemnity. He relied upon the promise, and the promise was broken. There was no other fraud in the case than such as is involved in all breaches of contract.

The case cannot be distinguished in principle from that of *Montacute v. Maxwell*, 1 P. Wms. 618. There, the defendant had agreed with the plaintiff, before their intermarriage and

in consideration thereof, that the plaintiff should enjoy all her own estate to her separate use, and had agreed to execute writings to that purpose, and had instructed counsel how to prepare the writings. When they were to be married, the writings not being prepared, the defendant desired that this might not delay the match, and engaged upon his honor that she should have the same advantage of the agreement as if it were writing drawn in form by counsel, and executed. On a bill filed by the wife, the defendant pleaded the statute of frauds, by which " all promises in consideration of marriage, unless signed in writing by the party, are made void." The Lord Chancellor said :

" In cases of fraud, equity should relieve, even against the words of the statute ; as if one agreement in writing should be proposed and drawn, and another fraudulently and secretly brought in and executed in lieu of the former, in this or such like cases of fraud, equity would relieve ; but where there is no fraud, only relying upon the honor, word or promise of the defendant, the statute making these promises void, equity will not interfere."

This case is in point not only upon the question of fraud, but also upon that of part performance. We take it that when the plaintiff in that action married the defendant, she quite as effectually performed her part of the contract as the appellee in this case did when he signed the appeal bond.

There has been no part performance of the agreement that will take the case out of the statute. The case is certainly no stronger than where the purchase-money has been paid for land, and this has never, of itself, been held sufficient to take a case out of the statute. See, on the general subject, the case of *Sands* v. *Thompson,* 43 Ind. 18.

We are of opinion that the agreement set up in the cross complaint is void by the statute of frauds, not being in writing, and that no facts are averred that take it out of the statute.

The judgment below in favor of Hubbard, the appellee, is reversed, with costs, and the cause remanded.