STATUTE OF FRAUDS.—*Contract to Pay Debt of Another.*—The parol promise of A. to C. to sign a certain bond to C. as surety of B., for the return of certain United States Bonds, if C. would loan them to B., upon which promise C. relied, and accordingly loaned the bonds to B., is a contract for the payment of the debt of another within the statute of frauds, and is not actionable on the failure of B. to return the bonds to C.

PRACTICE.—*Appeal.—Cross Errors.*—An alleged error of the court in overruling a demurrer to an answer, where there has been judgment for the plaintiff, from which the defendant has appealed to the Supreme Court, must be assigned as a cross error, to entitle it to consideration.

From the Ohio Circuit Court.

*W. S. Holman, O. B. Liddell, J. Schwartz* and *Baker, Hord & Hendricks,* for appellant.

*J. D. Haynes, J. K. Thompson, F. Adkinson* and *McDonald & Butler,* for appellee.

WORDEN, J.—This was an action by Burkam against the Lawrenceburgh Woollen Manufacturing Company, Levin B. Lewis, Elijah S. Blasdell, Anson Marshall and the appellant, Ezra G. Hayes, on contract.

For reasons not necessary to be here stated, the action was put at issue and tried as against the appellant only. As to him, there was a trial by jury, resulting in a verdict and judgment for the plaintiff. Motion for a new trial overruled, and exception.

The complaint consisted of two paragraphs, the first of which is as follows:

"The plaintiff, for cause of action, says that heretofore, to wit, on the 30th day of October, A. D. 1867, the defendants procured from one Anson Marshall the loan of ten thousand dollars, par value of bonds of the United States, denominated 'Five-twenties,' of date July 1st, A. D. 1865, which bonds then had attached the coupons due on the 1st day of ———, A. D. 1868, and all subsequent coupons; and said bonds and coupons were then of the value of fifteen

thousand dollars; and avers that the defendants then and there promised to return to said Marshall, at the expiration of one year thereafter, like United States bonds of the same date, and having attached the coupons due January 1st, 1869, and all coupons subsequently due thereon, which the defendants have failed to do; and further avers that the defendants reduced to writing said agreement, and the terms thereof are fully stated in exhibit 'A,' herewith filed, but the same was not executed by defendant Hayes, and is only made a part hereof to show more fully the terms of said parol agreement; and avers that at the time of procuring said loan, the defendants promised to make and deliver to said Marshall their agreement in writing as aforesaid, but the defendant Hayes has hitherto failed to do so; and further avers that on the 30th day of October, A. D. 1868, when the defendants were bound by their promise aforesaid to deliver to said Marshall said bonds and coupons, they were of the value of —— dollars, and they are now of the value of fifteen thousand dollars; and the defendants, by the breach of their promise as aforesaid, have kept and retained to their own use said bonds and the coupons thereon, and the interest and use on said coupons, which matured and were payable semi-annually in gold coin on the first day of January and July of each year; to the damage of the plaintiff in the sum of fifteen thousand dollars.

" Plaintiff further avers that heretofore, to wit, on the —— day of March, A. D. 1871, said Marshsll sold, delivered and assigned to the plaintiff said claim and account and all his right of action thereon, a copy of which assignment and account is herewith filed and made a part hereof, and marked exhibit ' B.' And said Anson Marshall is made a defendant to answer as to his interest in said cause of action. And plaintiff prays judgment for fifteen thousand dollars and general relief."

The second paragraph of the complaint was based upon substantially the same cause of action, but the matters were

alleged more minutely and in detail. It need not be here set out, in order to an understanding of the ground upon which we think the case must be decided. Exhibit "B" is a copy of an account made out for the bonds, and an assignment thereof by Marshall to the plaintiff, Burkam. The other exhibit is as follows:

## "EXHIBIT A.

"Know ye all men by these presents, that we, E. S. Blasdell, President of the Lawrenceburgh Woollen Manufacturing Company, E. D. Moore, Secretary of said company, L. B. Lewis, Ezra G. Hayes, and E. S. Blasdell, all of Dearborn county, State of Indiana, are held and firmly bound unto Anson Marshall, of same county and State, in the sum of twenty thousand dollars lawful money of the United States, to be paid to the said Anson Marshall, his heirs or assigns, for which payment well and truly to be made, E. S. Blasdell, President, and E. D. Moore, Secretary, of the aforesaid Lawrenceburgh Woollen Manufacturing Company, do bind the said company, and the other parties named above and signing the instrument bind themselves, each and every one of them, firmly by these presents. Sealed with our seals and dated this 30th day of October, 1867.

"The condition of the above obligation is such that if the above bounden E. S. Blasdell, President, and E. D. Moore, Secretary, of the Lawrenceburgh Woollen Manufacturing Company, and their associates in this obligation shall well and truly deliver to the said Anson Marshall, the party of the second part, or to his heirs or assigns, bonds of the United States to the amount of ten thousand dollars, of the denomination of five-twenties, and of the date of July 1st, 1865, and the said bonds are to have on them, when delivered to said Marshall, the coupons due January 1st, 1869, and all coupons subsequently due on said bonds, and shall deliver said bonds in one year from the above date; then the above

obligation to be null and void; otherwise to be in full force and virtue.

(Signed)

"E. S. BLASDELL, Pres. [Seal.]
"E. D. MOORE, Sec'y.    [Seal.]
"L. B. LEWIS.              [Seal.]
                         "[Seal.]
                         "[Seal.]"

Hayes answered:

1. By general denial; and,

2. In substance, that he was surety only for the corporation mentioned, and that Marshall gave the corporation further time for the payment of the bonds, without the knowledge or consent of the defendant, whereby he was discharged. This paragraph was held good on demurrer, and the appellee asks us to review this ruling in case the judgment should, for any cause, be reversed, assuming that a cross error had been assigned upon it. But, upon an examination of the record, we find no cross error assigned. Replication in denial.

The main ground of defence which seems to have been relied upon by Hayes was, that the corporation was the principal to whom the bonds were loaned, and that he was to become surety for the corporation, but that never having signed the bond, or any agreement in writing whereby he became bound, his contract, by reason of the statute of frauds, cannot be made the foundation of an action.

There was evidence tending to show that the corporation mentioned was the borrower of the bonds lent, and that Hayes was to sign the bond to be executed to Marshall, as the surety of the corporation. Indeed, an answer of the jury to an interrogatory put to them shows that Hayes promised to sign the bond as the surety of the corporation.

Instructions were given, and others refused, involving the law as applied to such a state of facts, but we deem it unnecessary to set out more than two of them, as they will illustrate the theory on which the cause seems to have been

tried.   The defendant asked the following instruction, which was refused.   Exception.

" 2.   If the jury believe from the evidence that at the time of the borrowing of the U. S. Five-twenty bonds in the complaint mentioned, from the defendant Anson Marshall, by and through the agency of the said Elijah S. Blasdell, the Lawrenceburgh Woollen Manufacturing Company, as principal and original contractor, agreed with said Anson Marshall to execute to him the bond in the complaint described for the redelivery of such U. S. Five-twenty bonds, at the expiration of one year, and the said Levin B. Lewis and Ezra G. Hayes, together with the said Elijah S. Blasdell, at the time, also agreed with said Anson Marshall to execute such bond as sureties for the said company simply, yet although said Ezra G. Hayes so agreed to execute such bond as such surety, and although when he so agreed to execute such bond as such surety he did not intend to execute it, if he in fact, as is alleged and admitted in the plaintiff's complaint, did not so execute such bond, he is not liable to the plaintiff in this action, and you should find for the defendant Ezra G. Hayes. "

The court gave the following charge, to which the defendant excepted:

" 2.   If you find from the evidence that the defendants, other than Marshall, borrowed of Marshall the bonds described in the complaint, and that the defendant Blasdell, in his individual capacity, and not as President of the Lawrenceburgh Woollen Manufacturing Company, and the defendants Lewis and Hayes were sureties of said company, and that the agreement between the parties was that the contract to borrow the bonds of Marshall was in other respects such as is described and set forth in exhibits ' A ' and ' B ' of the complaint, and that it should be reduced to writing and signed by the defendants, and that the contract was reduced to writing, and the defendant Hayes was informed of the terms and conditions of the contract and that it was to be reduced to writing, and that he consented to be responsible with the

company, Blasdell and Lewis for the bonds, and agreed to sign the contract, and that in pursuance of such agreement the contract was reduced to writing in his presence by Lewis and read over to him, and that the rough draft of the contract, so written and read to him, was afterwards copied by Moore, the secretary of such company, the defendant Hayes agreeing to sign it after it was so copied, and after it was so copied and signed for the company, it was shown to Marshall, and it was satisfactory to him upon its being signed by the defendants other than the company and left for him at the Lawrenceburgh National Bank, of which bank the defendant Hayes was at the time president, and upon the faith of its being so signed and left at said bank, Marshall gave an order on the First National Bank, where his bonds were deposited, to deliver the bonds to his son, for the purpose of being delivered to the company, who left the order at the bank, and that the contract was then presented to the defendant Hayes by Blasdell for his signature, and he excused himself from signing it then, that he had to go to Cincinnati, and the train was then ready, and told Blasdell to leave the contract with the cashier of the Lawrenceburgh National Bank, and that he would sign it on his return, and the contract was left with the cashier of the bank as directed by the defendant Hayes, and the bonds were then drawn by Blasdell from the First National Bank of Lawrenceburgh, and that Hayes never signed said contract, and when afterwards presented by the plaintiff with said contract and requested to sign it he refused to do so, and that said bonds have not been paid back to said Marshall before he assigned said contract and all his claim and right of action for the loan of said bonds, nor to the plaintiff, then such neglect and refusal of the defendant Hayes to sign said bond was fraudulent, and the bond which would have been executed but for the fraud is to be treated as if actually executed, and you should find for the plaintiff for the value of said bonds at the time they should, by the terms of said contract, have been paid back, with interest thereon, after

deducting any interest or principal that has been paid, if any, unless you find from the evidence that the defendant Marshall, before he assigned said contract and all his claim and right of action to the plaintiff, extended the time of payment of said bonds to said company for a certain or definite period of time, for a valuable consideration, without the knowledge or consent of the defendant Hayes."

If the government bonds were lent by Marshall to the corporation, and Hayes was to become the surety of the corporation for their payment, there is no doubt that his contract was for the payment of the debt of another, and not the foundation of an action unless reduced to writing and signed as required by the first section of the statute of frauds. 1 G. & H. 348.

We are of opinion that the charge asked and refused should have been given. We suppose it was refused, because it was thought that Hayes' promise to execute the bond, he not intending at the time to execute it, rendered him liable without having executed it. But this view is clearly erroneous. Hayes' promise to execute the bond was a promise to do something in the future, and legal fraud cannot be predicated of such promise. *Beaver* v. *President, etc., Hartsville University*, 34 Ind. 245; *Fouty* v. *Fouty*, 34 Ind. 433; *President, etc., Hartsville University* v. *Hamilton*, 34 Ind. 506; *The State* v. *Prather*, 44 Ind. 287; *Gallager* v. *Brunel*, 6 Cow. 346.

In the latter case, the judge, in delivering the opinion (p. 351), said: "The intention of the party not to fulfil, has not, I believe, ever been considered among the fraudulent acts, which, in judgment of law, render a party liable."

The charge given was erroneous, and should have been refused. The substance of the charge is, that if Hayes, by his promise, acts and conduct, induced Marshall to believe that he would sign the bond as one of the sureties of the corporation, on the faith of which Marshall acted and parted with the government bonds to the corporation, and Hayes afterwards refused to sign the bond, as he had thus agreed,

his refusal was such a fraud as would make him liable, as if he had signed the bond.

This, in our opinion, is not the law. Such a rule would, by construction, operate as a virtual repeal of that portion of the statute of frauds applicable to the case. There is no other fraud involved in such case than is involved in all purposed breaches of contract. " The fraud against which equity will relieve, notwithstanding the statute, is not the mere moral wrong of repudiating a contract actually entered into, but which, by reason of the statute, a party is not bound to perform for want of its being in writing." Browne Stat. Frauds, sec. 439.

The fact that Marshall parted with his property on the faith that Hayes would sign the bond, will not make Hayes liable, not having signed the bond, as will be seen by the cases to be hereinafter noticed.

In 3 Powell on Mort. 1050c, it is said: " With respect to parol agreements for a mortgage, the statute of frauds (29 Car. 2, c. 3) enacts," etc., setting out the statute. " The consequence is that a parol agreement to execute a mortgage will not be binding on the party to be charged therewith. * * * To put the case of pure oral contract—if A. agree with B., in presence of their common solicitor, to make a mortgage for a sum which B. advances, or for a debt due from A. to B., and A. delivers to the solicitor title deeds to assist him in preparing the mortgage, which is prepared accordingly, yet A. may resist specific performance of his contract, and B. will have no relief in equity."

The early case of *Montacute* v. *Maxwell*, 1 P. Wms. 618, is quite in point here. There the defendant had agreed with the plaintiff, before their marriage and in consideration thereof, that the plaintiff should enjoy all her own estate to her separate use, and had agreed to execute writings to that purpose, and had instructed counsel to draw the writings. When they were to be married, the writings not having been prepared, the defendant desired that this might not delay the match, and engaged, upon his honor, that she should have

the same advantage of the agreement as if it were in writing, drawn in form by counsel and executed. On a bill filed by the wife, the defendant pleaded the statute of frauds. The plea was allowed.

The Lord Chancellor said: "In cases of fraud, equity should relieve, even against the words of the statute; as, if one agreement in writing should be proposed and drawn, and another fraudulently and secretly brought in and executed, in lieu of the former, in this or such like cases of fraud, equity would relieve; but where there is no fraud, only relying upon the honor, word or promise of the defendant, the statute making these promises void, equity will not interfere."

We see no fraud in the matters hypothetically put in the instruction given, except the moral fraud involved in the refusal by Hayes to sign the bond in accordance with his agreement. Such moral fraud, however, is not the subject of legal cognizance. Marshall, doubtless, relied upon the promise of Hayes to sign the bond. The woman, in the case cited from P. Wms., also relied upon the promise of the defendant in that case. Marshall parted with his property on the faith of Hayes' promise. The woman in the case cited bestowed her person on the faith of the promise of the defendant in that case.

The case of *Carville* v. *Crane*, 5 Hill, 483, is in point. There the declaration alleged, that, "in consideration that the plaintiff, at the special instance and request of the defendant, would sell and deliver to the firm of G. B. & J. L. Crane a certain bill of goods upon credit, amounting to the sum of two hundred and fifty-one dollars and sixty-four cents, the defendant undertook and promised the plaintiff, without writing, that he (the defendant) would join the said firm in a promissory note for the price of said goods, the said firm to be makers thereof, and the defendant to be the payee and first endorser thereof; said note to be made payable in six months from the sale of said goods."

The declaration then averred a sale and delivery of the

goods, and a refusal by the defendant to endorse the note of
G. B. & J. L. Crane.   On demurrer, judgment was rendered
for the defendant, because the contract was within the statute
of frauds.   That case and the one in judgment are strikingly
similar.   There the plaintiff sold the goods to the firm on the
faith of the defendant's promise to endorse the note.   Here
Marshall made the loan to the corporation on the faith of the
appellant's promise to sign the bond.

*Gallager* v. *Brunel*, 6 Cow. 346, was a case in which it was
sought to hold the defendant liable in tort for representing
and pretending falsely that he was willing to endorse the
note of Castro & Henriques, to be given to the plaintiff for
cotton to be sold by the plaintiff to that firm.   The complaint
was held bad.

The court said (p. 351):   "If this case is stripped of the
general allegations in the declaration, of fraud and deceit, it
appears to me that the *gravamen* is nothing more than that
the defendant encouraged the plaintiffs to sell to Castro &
Henriques; and, as surety, promised to endorse their notes."

And again, at page 352:   "Caution required the plaintiffs
to pursue a different course; to insist that the note be drawn
and endorsed *pari passu* with the delivery of the goods.   By
dispensing with this, they omitted that prudence and care
which the law presumes every man will exercise in conduct-
ing his affairs.   If the plaintiffs suffer, it is owing to their
negligence and misplaced confidence, for which the law has
not provided a remedy."

The case of *Bronson* v. *Stroud*, 2 McMullan, 372, is also
strikingly in point.   There the plaintiff had hogs to sell.
One Henning wished to purchase them, but the plaintiff
wanted security.   Stroud agreed with the plaintiff to become
Henning's security, and told the plaintiff to let Henning
have the hogs, but that he lived some miles distant, and
wished to go home that evening, and could not wait until the
hogs were weighed, but directed the plaintiff, when they
were weighed, to make a calculation and draw the note for

the amount, and let Henning sign it, and then bring or send it to him, and he would sign it with him. He said he would go in with Henning in the note for the hogs. The hogs were accordingly delivered to Henning on this undertaking of Stroud. A note was drawn and signed by Henning, and afterwards presented to Stroud for his signature, which he refused.

It was held that Stroud was not bound, the contract being within the statute of frauds. The refusal of Stroud to sign the note, it seems to us, was quite as great a moral fraud as that of Hayes to sign the bond. Neither refusal, however, amounted to a legal fraud.

The case of *Irwin* v. *Hubbard*, 49 Ind. 350, is also in point. In that case there was a judgment against Milton Treadway, before a justice of the peace, from which he wished to appeal. He desired Hubbard to go upon his appeal bond. William W. Herod had a mortgage on certain real estate against Treadway, and it was agreed between Herod, Hubbard and Treadway, that if Hubbard would go upon the appeal bond, the mortgage which Herod held against Treadway should be so changed as to contain an indemnity to Hubbard against any loss he might incur in signing the appeal bond. In pursuance of this agreement, Hubbard signed the appeal bond, and was compelled afterwards to pay on it something over two hundred dollars. The mortgage never was so changed, according to the contract.

It was held, that the contract was within the statute, and that Hubbard had no lien upon the land.

The cases of *Wilson* v. *Ray*, 13 Ind. 1, and *Sands* v. *Thompson*, 43 Ind. 18, have more or less bearing upon the question here involved; but we will not extend this opinion by the addition of further authorities.

The judgment below is reversed, with costs, and the cause remanded for a new trial.