[No. 4325.]

JEREMIAH HOLLINSHEAD *v.* M. W. SIMMS ET AL.

CONSTRUCTIVE TRUST.—If, through fraud and perjury, a person acquires the title to a tract of public land, upon which another was living, and to which such other had a pre-emption right, a constructive trust arises in favor of the party having such pre-emption right, which the law will fasten upon the conscience of the other, and such other will be compelled to convey the legal title to the pre-emptor upon being refunded the money which he would have been compelled to pay the government if he had been permitted to pre-empt the land. ·

IDEM.—If, in such case, the pre-emptor uses ordinary care to find when the plat of survey is filed in the land office, he will not lose his rights for want of diligence, even if more than a year expires after the plat of survey is filed before he applies to file his declaratory statement.

APPEAL from the District Court, Twentieth Judicial District, County of Santa Cruz.

In October, 1866, the defendant Simms settled upon and thenceforward continued to reside on and improve subdivisions of section two, township ten south, of range four west, Mount Diablo base and meridian, and known on the official survey as lots No. 1, No. 2, No. 9, and No. 10, and containing less than one hundred and sixty acres. Prior to 1866, a portion of said township had been surveyed and the official plat of the survey filed in the United States Land Office at San Francisco, but there had been no official survey of said section two. Simms was a qualified pre-emptor, and was intending to pre-empt said lots when they were surveyed, and employed one Moore, a land agent in San Francisco, to examine the land office, and see when the official plat of a survey was filed, and to notify him when the filing took place. Moore examined the records of the land office from time to time, but did not discover that the survey had been made until April, 1872. In July, 1870, the official plat containing a survey of said section was filed in the land office. The State of California had organized a University, to which belonged the land coming to this State under the act of July 2, 1862, donating public lands to the several States for the benefit of colleges of Agriculture and the Mechanic Arts; and, on the 23d of November, 1870, Wood, as the agent of Hollinshead, applied to the land department of the University to purchase said lots along with other subdivisions, as a part of the land-grant made to the State under said act. By an act of our Legislature the University selected and sold its lands. Wood then, and again on the 23d of May, 1871, filed affidavits in the University land office. The University sold him, as the agent of Hollinshead, the land, for five dollars an acre, and gave him a certificate of purchase. The rules adopted by the land department of the University required those who applied to purchase land to take an affidavit that there were no legal or equitable claims to the land, and that there was no occupation of or settlement on the same, except that of the applicant. The United States

Register and Receiver, after the purchase from the University, certified the land over to the State of California, and, on the 17th day of January, 1873, Wood received a patent from the State, and then conveyed to Hollinshead. The lots occupied by Simms contained one hundred and twenty-five acres, and, on the 16th day of April, 1872, when he first heard that the plat of survey had been filed, he applied to the Register of the land office to be allowed to file his declaratory statement. His improvements on the land were of the value of about two thousand dollars. The Register refused to allow him to file the statement, because the land had been certified over to the State. On the 28th of January, 1873, the plaintiff commenced this action to recover possession of the land he had so purchased, which consisted of lots 1, 2, 3, 5, 6, 7, 8, 9, 10, and the southeast quarter of the northwest quarter of said section, containing three hundred and twenty-one and ninety one-hundredths acres. The defendant, for relief on the equity side of the court, set up the foregoing facts in relation to his settlement on lots 1, 2, 9 and 10, and in relation to the purchase by the plaintiff, and asked to have the plaintiff declared his trustee, etc. The plaintiff, if he had been permitted to pre-empt the land, would have been required to pay the government only one dollar and twenty-five cents per acre. The court below denied equitable relief, and rendered judgment for the plaintiff. The defendant appealed.

The other facts are stated in the opinion.

*Joseph K. Skirm,* for the Appellant.

Plaintiff claims under the acts of Congress commonly called the "University Land Acts." The first of these was passed on July 2, 1862, and limited the selection to be made by the States to surveyed lands, and lands subject to sale at private entry. (Brightly's Digest, 1250.) By a subsequent act of Congress, approved June 8, 1868, it was provided that such lands might "be selected by said State of California, from any lands within said State subject to pre-emption and sale; provided that this privilege shall not extend to lands upon which there may be rightful claims under the

pre-emption and homestead laws. (15 U. S. Stats. at Large, 68.)

The same proviso is contained in the act of Congress of March 3, 1871. (U. S. Stats. at Large, 581.)

The Legislature of this State, by act passed March 23, 1868, enacted that the "University lands" should be "located and sold under the direction of the Board of Regents, and for such price and such terms only as they should prescribe." (Stats. of Cal. 1867-8, p. 257.)

The Board of Regents, by the rule in force at the time of Woods's application, required an affidavit by applicants "that there were no valid claims of any kind to the lands applied for, other than those of the applicant," which affidavit was made by Woods.

Before this application was approved, the board by another rule required all pending applications to be accompanied with the additional affidavit, "that there were no legal or equitable claims," to the lands applied for, "and that there was no occupation of nor settlement upon the land other than by the applicant."

The affidavit to this effect, except in the substitution of the word "improvements" in the place of "settlement" was made and filed by Woods on May 23, 1871.

Mr. Skirm cited: *Lytle* v. *State of Arkansas*, 9 How. 328; *Garland* v. *Wynn*, 20 How. 6; *Lytle* v. *State of Arkansas*, 22 How. 193; *Lindsey et al.* v. *Hawes et al.*, 2 Black, 554; *State of Minnesota* v. *Bachelder*, 1 Wall. 109; *Silver* v. *Ladd*, 7 Wall. 219; *Johnson* v. *Tousley*, 13 Wall. 72.

*F. Adams*, for the Respondent.

The defendant Simms cannot question the validity of the patent from the State to Woods for the lands in dispute, nor even for fraud; for these matters the right to interfere rests only with the Government. (*Moore* v. *Williamson*, 13 Cal. 487.)

The defendant can resist the conclusiveness of the patent only on the ground that it conflicts with prior *vested* rights in him. (*Moore* v. *Williams*, 13 Cal. 487.)

Until some one appears who can trace title to himself from the common paramount source, the plaintiff with this patent from the State may rest in security. (*Rhodes* v. *Craig*, 21 Cal. 423; *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 361; *Miller* v. *Dale*, 44 Cal. 578; *Hagar* v. *Lucas*, 29 Cal. 311.)

*Wm. P. Daingerfield and F. Adams*, on application for a rehearing.

The defendant Simms had, at the date Woods filed his application to these lands, no legal or equitable claim thereto. (Pre-emption Acts 1841, 457, Vol. 5, Statutes at Large; Amendatory Acts 1853, 257, Vol. 10, Id. Sec. 6; also Act 1862, 410, Vol. 12, Id. Sec. 7, which requires declaratory statement to be filed *within* three months after receipt of plat, in United States Land Office.)

One who settles on unsurveyed public lands as a preemptor, but who fails to file with the register of the proper land office his declaratory statement within three months after the plat of survey of the lands is filed in the Register's office, looses his pre-emption claim as against one who in the meantime has taken the necessary steps to acquire the title to the lands. (*Poppe* v. *Atherton*, 42 Cal. 606; Decision Sec. Int., Nov. 6, 1868, Lester L. L. 405.)

Courts have no power to dispense with the requirements of the acts of Congress, that pre-emptors must file their declaratory statement within three months after the return of the plat to the land office. (*Megerle* v. *Ashe*, 33 Cal. 74; *Damrell* v. *Meyers*, 40 Id. 116.)

Under the provisions of the act of Congress, passed March 3, 1853, the declaratory statement of a pre-emptor must be filed within three months from the time the plat of the survey of the township is returned to the local land office, or it will not secure the claimant's right of preemption. (*Megerle* v. *Ashe*, 47 Cal. 632.)

A person who has neither filed his declaratory statement, nor been prevented from so doing by the fraud of another person, cannot avail himself of an entry made by such other person and a patent issued in pursuance thereof. (*Damrell* v. *Meyer*, 40 Cal. 166.)

By the COURT:

The judgment and order denying a new trial as to that portion of the premises described in the complaint and not described in the equitable defense of Simms are affirmed. In all other respects the judgment and order denying a new trial are reversed and the cause remanded with directions to enter a decree, that upon payment by Simms to Hollinshead of one dollar and twenty-five cents per acre for each acre of land contained in the tract described in the equitable defense, Hollinshead do forthwith convey to Simms all the estate, right, title and interest derived to him, said Hollinshead, in or to the premises described in the equitable defense, by or through the several applications made by him to the land department of the University of the State of California, for the purchase of said premises, and that said appellant Simms recover against said Hollinshead the costs of this action, including the costs of this appeal.

A petition was filed for a rehearing, and the Court filed the following opinion denying the same:

The fourteenth finding of the Court is as follows:

"Fourteenth. That neither Woods nor Hollinshead have at any time resided upon or occupied any portion of this land, or ever made any improvements whatever upon the same."

The sixth finding is as follows:

"Sixth. Upon the 23d of May, 1871, the said Woods, still acting as agent for Hollinshead, filed with the land office of the University another affidavit and application for this land, in this affidavit setting forth that he was in the occupation of this land; that there were no legal or equitable claims of any other person upon the same, and that there was no occupation or settlement of this land other than the occupation of said affiant," etc.

It is not claimed that the evidence given at the trial did not support the findings.

It is further found by the court that this affidavit of Woods was false in fact; that neither he nor Hollinshead ever, at

any time, occupied any portion of the land in controversy; that, on the contrary, the fact was, as both Woods and Hollinshead well knew, that Simms, a qualified pre-emptor, with his family, was in occupation with the intention to acquire the title; that he had placed on the premises improvements of a valuable and permanent character, consisting of a dwelling-house, out-buildings, fences, fruit trees, etc., and that these were of a conspicuous and prominent character, and easily to be seen from every portion of the general tract.

In short, it is in effect found that the title acquired by Hollinshead was acquired by sheer fraud and through bald perjury. Upon looking into the record, we were of opinion, and we are still of opinion, that under such circumstances a constructive trust would arise in favor of Simms which the law would fasten upon the conscience of Hollinshead, and compel him to convey to Simms the legal title which had been obtained in the manner and by the means already adverted to.

In arriving at the conclusion reached by us at the hearing, we did not suppose, as is now claimed in the petition for a rehearing filed in this case, that we had disturbed "principles and rules of law    *    *    *    settled by a long line of decisions" governing the acquisition of titles to portions of the public lands in this State. Those decisions necessarily presuppose that the conduct of the parties has been fair—at least not positively fraudulent.

But in the present case Hollinshead, through actual fraud, and as the result of perjury committed, has obtained for himself an estate to which Simms had the only equity, coupled with the right as against the government, to acquire the legal title. Nor does Simms seem to have been lacking in diligence in the assertion of his claim. That under such circumstances, Hollinshead should be decreed to relinquish his title to Simms, is not opposed to any "line of decisions" with which we are acquainted.

Rehearing denied.