ORTH ET AL. *v.* ORTH ET AL.

[No. 16,493. Filed November 26, 1895. Rehearing denied May 28, 1896.]

WILL.—*Letter to Beneficiary.*—Where a husband by his last will makes his wife his sole beneficiary, a letter to her in reference to the disposition of his property, not being attested as required by statute, is not of a testamentary character.

SAME.—*Letter to Beneficiary.*—*Trust.*—Where a testator makes his wife his sole and absolute beneficiary, a letter to her, of the same date as the will, informing her of the terms of the will, advising her as to the management of the estate and expressing a hope that she would deed certain real estate to a person named, and that she would have sufficient after paying all debts to assist his children as they might need from time to time, and expressing full confidence that she would act justly toward all, closing with a desire that she should have a competence during life and that she would give what remained equally to his children, does not create an enforcible trust in favor of the children.

SAME.—*Parol Promise of Beneficiary.*—*Constructive Trust.*—*Trust Ex Maleficio.*—The violation of a parol promise by the sole and absolute beneficiary, to the testator, to carry out his wishes, expressed in a letter written to the beneficiary by such testator, is not such a fraud as will create a trust *ex maleficio.*

SAME.—*Parol Promise of Beneficiary.*—*Statute of Frauds.*—A parol promise to a testator by the sole beneficiary of his will to give certain property to another person is void so far as it involves the transfer of real estate, or of personal property in a sum greater than $50.00.

SAME.—*Equity.*—*Executory Parol Trust.*—Equity will not enforce, in behalf of a mere volunteer, an executory parol trust.

From the Carroll Circuit Court. *Affirmed.*

*G. Burry, Palmer & Spencer and Gould & Eldridge,* for appellants.

*Wallace & Baird,* for appellees.

HACKNEY, C. J.—The late Honorable Godlove S. Orth, by his last will, devised and bequeathed to Mary Ann Orth, who was his second wife, all of his real and

personal property, without condition, reservation, or limitation. Bearing the date of said will and accompanying the same was this letter from the testator to his said wife:

"To My Dear Wife—Among my papers you will find my will of this date. I give and bequeath to you all my property, real and personal. I do this because it will greatly facilitate the settlement of my estate, will tend to save unnecessary costs and expenses and will give you, if properly managed, a competence during your life, and something for each of the children, Will, Mollie, and Hal thereafter.

"After the payment of all my debts, I trust you will have sufficient left to assist all my children as they may need from time to time, without, however, endangering your own support, and I have full confidence that you will act justly toward all.

"Unfortunately, as you know, I am heavily in debt, but by prudent management, I think, you can save our Benton county farms, or at least the 640 acres, being in section 12, and selling, if necessary, the two eighty-acre tracts in section 1. The two houses occupied by W. M. Orth and Jos. Ewing, are now held by us jointly, and on my death will become your property without the will. I should like very much, and hope you will, as soon as you find you can safely do it, make a deed to my granddaughter, Lizzie Ray Orth, for the house now occupied by her father, this will furnish them with a home.

"Our land in Bollinger county, Missouri, is also held by us jointly, and after my death will belong to you without the will. Some of my creditors may want their money sooner than you can realize by sale of property; in such event, I advise you to borrow money, by giving mortgage on some of my property, but I would advise you not to mortgage your own property

for any such purpose. Unless I am much mistaken, the rents from the city property and farms will always be more than sufficient to pay taxes and interest on my debts, but, of course, it will be good policy to sell property as fast as you can conveniently, without sacrifice, and apply proceeds to the payment of my debts. Whenever you can sell any of your own property, especially that which is unproductive, I advise you to do so, and apply proceeds to the payment of my debts, thus relieving the property, which by the will becomes yours, of the debts against the same. I do not think it necessary to administer on the estate, you can settle without it I think. But should it become necessary, you can take out letters yourself, or join some good friend with you. You will need advice. Hal will, of course, be on hand, besides others whom you may regard as trustworthy. Do not pay my debts until a full examination, for it might so happen that claims will be presented through mistake or otherwise, or without proper credits allowed. In my papers you will generally find receipts and memoranda in reference to all my business affairs. Have all these carefully examined. In a word, act carefully, prudently, and under such good advice as you can procure, and act justly towards yourself and towards all my children, and I shall be content. My desire in this matter is that all my debts be paid, that you have a competence during your life, and then, what is left give to all the children alike. Farewell.     GODLOVE S. ORTH."

In December, 1882, he departed this life, leaving surviving him his widow, said Mary Ann Orth, who elected to take under the will, Harry A. Orth, and Mary Orth McNutt, his children by said Mary Ann, and William M. Orth, a son by his former wife. Since the death of the testator said Mary Ann Orth and William M. Orth have departed this life intestate; Harry

A. Orth is administrator *de bonis non*, with the will annexed, of the estate of said testator, and is administrator of the estate of said Mary Ann Orth; William M. Orth left surviving as his only heirs, the appellants, Eliza Gertrude Orth, his widow, and Lizzie Ray Orth, his daughter, and the appellant Spencer is administrator of said William's estate.

Said appellants instituted this suit, in eight paragraphs of complaint, against the appellees, Mary Orth McNutt and Harry A. Orth personally, and as administrator of said two estates of his father and his mother. Harry A. Orth and Mary Orth McNutt severally demurred to each paragraph of the complaint, stating as causes of demurrer that neither paragraph stated facts sufficient to constitute a cause of action, and that several causes of action were improperly joined. Harry A. Orth, in his capacity as administrator *de bonis non*, demurred separately to each paragraph of complaint, stating as causes of demurrer a want of sufficient facts, a want of jurisdiction over his person, and a want of jurisdiction of the subject-matter of the action. Pending the demurrers, the plaintiffs dismissed their action as to the estate of Mary Ann Orth, and thereupon the court sustained said several demurrers to the several paragraphs of complaint. Upon that ruling arise the only questions for review.

The first paragraph of complaint alleged the execution of the will and of said letter, both of which were exhibited by reference, and alleged that Mary Ann Orth knew the contents of said letter, and promised said Godlove to carry out the requests and intention expressed in said letter; that said Godlove, during his last illness, would have made other provisions in favor of said William, but that Mary Ann, Harry A., and Mary O., conspired to deprive William

of any interest in the estate, and did, by promises and protestations, dissuade said Godlove from making changes in his will, and that they did, during his last sickness, exclude from his room and bedside the friends of William, and persons who might secure a change in said will; that, a few days before his death, said Godlove called to his bedside his said wife and his three children, and in the presence of each and all of them had said wife and said children, Harry A. and Mary O., to promise to carry out the wishes expressed in said letter. It is also alleged that parts of the estate were converted by Mary Ann Orth and parts were made over to and converted by said Harry A. and Mary O.; that Mary A., when executrix, and Harry A., as administrator *de bonis non*, made no inventory and no accounting to the court of the assets of the estate, or any disposition of the same. An accounting and partition are prayed upon the theory that the letter and the oral promises created a trust in favor of William M. in the property of the estate of his father.

The second paragraph alleges substantially the same facts, but adds that after the death of Godlove S. Orth, his widow, Mary Ann Orth, stated to William M. Orth that she was intending and endeavoring to treat all the children alike, according to the expressed wishes of his father; that, pursuant to that expressed intention and her promise, she procured a will to be written, which, to some extent, would carry out such wishes; that said Harry A. and Mary O., further contriving to defraud William of that portion of the estate of his father, which, after the death of Mary Ann would rightfully belong to him or his heirs, by importunities, and by appealing to the maternal feeling of said Mary Ann Orth in an improper manner, before and during her last sickness, postponed from

time to time the execution of such will until Mary Ann Orth died without making provision for said William. By this paragraph damages are sought.

The third paragraph differs from the first in alleging a promise by Mary Ann Orth to William Orth, after the death of Godlove S. Orth, to carry out the wishes expressed in said letter, and frequent requests by William M. that she do so, and that she died, having neglected to comply with that promise. Damages are claimed by this paragraph.

The fourth paragraph pleads the facts alleged in the second paragraph, but upon the theory of a trust, as in the first paragraph, seeks an accounting and partition.

The fifth paragraph alleges substantially the facts pleaded in the first, second, and third paragraphs, and demands an accounting and partition.

The sixth paragraph differs from the third in alleging that the promise of Mary Ann Orth to William M., to carry out the wishes of his father, as expressed in said letter, was induced by a threat of said William to sue her for the enforcement of his claim, and that by reason of her said promise and in consideration thereof he desisted from suing as he had intended. An accounting and partition were prayed.

The seventh paragraph alleged the facts of the sixth, and, instead of an accounting and partition, sought damages.

The eighth paragraph was the same as the sixth, omitting the allegation that William M. Orth withheld suit in consideration of the promise of Mary Ann Orth to provide for him, and that she had died without executing her will. In addition to the facts pleaded in the sixth paragraph, it was alleged that Harry A. and Mary O. wrongfully converted to themselves the property of Godlove S. Orth remaining at

the death of Mary Ann Orth. The demand was for damages.

The complaint covers ninety pages of typewritten legal cap, and the paragraphs differ so slightly that we have deemed it advisable to state them briefly, rather than to set them out at length.

Our statute of wills, section 2746, R. S. 1894, provides that "No will except a nuncupative will shall affect any estate, unless it be in writing, signed by the testator, or by some one in his presence with his consent, and attested and subscribed in his presence by two or more competent witnesses." It would seem unnecessary to remark that this provision is wise, in its purpose to require the solemn and almost sacred disposition of property by testament, to exclude unauthentic writings, the possible subjects of forgery, and evidence of parol declarations of devise and bequest, the possible subjects of false testimony. The letter of the testator, if it contained testamentary words, has not the attestation required by the statute, to entitle it to recognition as his will, nor does it carry even the force of recognition by any reference from within the lines of the will. It is not acknowledged, as required in the case of deeds, even if that should be sufficient, and has no other authentic protection from the rule guarding against forged instruments of title. We do not regard the letter as of a testamentary character. See *McCarty, Admr.,* v. *Waterman,* 84 Ind. 550; *Moore, Treas.,* v. *Stephens, Exr.,* 97 Ind. 271. Indeed, we do not understand counsel to insist that by it William M. Orth became a devisee or legatee, but it may, possibly, be considered in determining the intention of the testator in the provisions made by his will. *Copeland, Exr.,* v. *Summers,* 138 Ind. 219. In so receiving it, however, we should be mindful of the rule that the authentic

provisions of the testament itself are recognized by the statute as the most worthy source of information as to the testator's intention, and that where the intention there manifested is without uncertainty or doubt, we should be slow to permit doubt or uncertainty to thrust itself into the will and thwart that clearly expressed and otherwise certain intention.

The only disposition of property, made by the will, was in the following language:

"I do hereby devise and bequeath to my wife, Mary Ann Orth, in fee-simple, all and singular, my real estate, of whatsoever nature or description, situate in Tippecanoe, Benton, and White counties, Indiana, all of my real estate in the states of Iowa and Missouri, or wheresoever else situated and of which I may die seized or possessed.

"And I do further give, devise and bequeath to my wife, Mary Ann Orth, absolutely, all of my personal estate, of whatever nature or description, which may be owned by me at the time of my death. I hereby grant to my said wife full power, either with or without administration on my estate, to collect all my debts and chooses in action, and to do whatever may be necessary in the final settlement of my estate, hereby enjoining upon her to pay all just debts and liabilities as soon after my death as may be.

"Should administration on my estate be necessary or desirable, I hereby appoint my said wife executrix of this, my last will and testament, giving her authority to associate one or more persons with her in the execution of this trust.

"I desire all my dear children to know and feel that this disposition of my estate is, in my judgment, the best under all the circumstances surrounding it—knowing that they will find my said wife as much disposed to love and care for them, and to deal justly

by them, as I have always felt and acted toward them myself."

It would be difficult, if not impossible, to conceive or to reduce to words a more sweeping and unfettered disposition of property, or a clearer or more certain designation of the object of the bounty. Mary Ann Orth was given, in fee-simple, all of the real estate, and was given, absolutely, all of the personal property. Considering the letter as if it followed these unambiguous declarations of intention to vest in the wife the fullest title known to the law, and we will determine its legal and equitable effect. We have already seen that it does not arise to the standard of a testament, and we are now to look at it, to ascertain if it bespeaks the testator's intention to have encumbered the devise and bequest with a trust in favor of his children. Almost the first words of the letter, which is addressed to his wife, are: "I give and bequeath to you all my property, real and personal." She is advised of his financial embarrassment, and, in a practical, thoroughly business-like course, she is advised how to take the best advantage of the embarrassment. In this advice the intention is repeated that her title and holding is unqualified, for he suggests that of her property, not received by devise, she sell that which is unproductive, paying his debts with the proceeds, and "thus relieving the property which, by the will, becomes yours." There is no word of command in the letter, but its tone is entirely advisory. True, there are expressions of hope, of confidence, and of request. The hope is that his indebtedness may not sweep away the estate and leave the wife without support during her life, without means to help his children from time to time, as they may need it, and without something which she may, at the end, give to his children. The

confidence that she will so help his children from time
to time, and finally, "what is left give to all the children
alike." The request that she convey to William's
daughter, Lizzie Ray Orth, as a home for William's
family, a house and lot belonging to the wife independently
of the will.

There is not a syllable expressing the intention to
charge the estate devised with an enforceable, legal
or equitable trust in favor of the children. There is
that which, from various expressions, denotes a confiding
trust in the wife that she will deal fairly,
justly, and equitably with his children. That trust
raises but a moral obligation, and creates no interest
in the property in favor of the children, and does not
burden the absolute title given by the will to the wife.
In 1 Lewin Trusts (ed. 1888), page 135, it is said:
"Where both objects and property are certain, yet no
trust will arise, if the testator expressly declare that
the language is not to be deemed imperative, or the
construing it a trust would be a contradiction to the
terms in which the preceding bequest is given; or, if,
all the circumstances considered, it is more probable
that the testator meant to communicate a mere discretion;
* * * * or if a testator give the property
to his wife, 'well knowing her *sense of justice and love of
family,* and feeling perfect confidence that she will
manage the same to the best advantage for the benefit
of the children;' or, 'to be used by her in such ways
and means as she may *consider best* for her own benefit
and that of my three children;' or, 'feeling confident
that she will act justly to our children in dividing the
same when no longer required by her' or, 'in full confidence
that she will do what is right as to the disposal
thereof between my children, either in her life
time, or by will after her decease;' or, 'to be at her

disposal in any way she may think best for the benefit of herself and family;' or, 'to his wife absolutely, with full power for her to dispose of the same as she may think fit for the benefit of his family, having full confidence that she will do so.'" We cite in support of the text the following decisions: *Harper* v. *Phelps*, 21 Conn. 256, 257; *McCreary* v. *Burns*, 17 S. Car. 45; *Colton* v. *Colton*, 21 Fed. Rep. 594; *Foose* v. *Whitmore*, 82 N. Y. 405, 37 Am. Rep. 572; *Howard* v. *Carusi*, 109 U. S. 725; *Hopkins* v. *Glunt*, 111 Pa. St. 287; *McIntyre* v. *McIntyre*, 123 Pa. St. 329; *Rose* v. *Porter*, 141 Mass. 309.

There should be no confusion of the expression of the testator of confidence that his wife, at her death, would provide for the children, with the absolute devises and bequests of the will so as to possibly imply a life-estate rather than a fee-simple in the wife. No such contention is made by the appellants, but the one inquiry arising from the letter is: does it point a trust in the property devised, or bespeak the testator's intention to raise a trust in favor of his children? Very clearly, we think, it does not. But, while considering it as if a part of the will, suppose its terms were more obscure and doubtful than we have regarded them, and that they should make the question doubtful as to whether the testator intended to narrow the otherwise free and unfettered devise and bequest. Our duty would then be to disregard the doubt and adhere to the clearly expressed provisions as indicating the intention of the testator. As said in the recent case of *Ross* v. *Ross*, 135 Ind. 367: "Where an estate in fee is devised in one clause of a will, in clear and decisive terms, it cannot be taken away or cut down by raising a doubt upon a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving

the estate in fee. *Bailey* v. *Sanger*, 108 Ind. 264; *O'Boyle* v. *Thomas, Trustee*, 116 Ind. 243."

The case of *Fullenwider, Admr.*, v. *Watson*, 113 Ind. 18, involves the two questions as to considering the effect of words of recommendation, and excluding those merely casting doubt upon provisions otherwise clearly made. There the will gave to the wife, by decisive words, the personal estate, but followed the words of bequest with the following: "to have, use and enjoy the same as she may choose, and to dispose of the same in such manner as she may desire; yet I request that if, at the time of her decease, any of the personal property shall remain undisposed of, it be given to the children of my son * * and the children of my daughter * *." This court said of the bequest: "We are very far within the authorities when we affirm the proposition that, where a bequest of personal property, without limitation to life or a particular use, is made, and is accompanied by an absolute power of disposition, the first taker takes the whole interest. It has been for centuries the rule that, where the whole estate is absolutely devised, a repugnant condition must yield. *Allen* v. *Craft*, 109 Ind. 476. But here there is no condition, for the words employed are words of recommendation, not words of condition or restriction, and the case is within the rule declared by the adjudged cases. *Van Gorder* v. *Smith*, 99 Ind. 404, and cases cited; *Stowell* v. *Hastings*, 59 Vt. 494, 59 Am. Rep. 748; *Howard* v. *Carusie*, 109 U. S. 725; *Knight* v. *Knight*, 3 Beavan, 148; 2 Story Eq. Jur., section 1070."

Considered as a rule for ascertaining the intention of the testator, there is no room to distinguish between bequests of personal property and devises of real estate. The force of the letter, in the creation of a trust, certainly gains no strength by considering it apart from the will, where it must stand, and where,

as we have said, the courts should be slow to accept it in the face of the Statutes of Wills, of Trusts, and of Frauds, as impairing the force of solemn testamentary provisions, made in conformity to the statutes. Appellants' learned counsel strenuously insist that they do not set up the letter as creating the trust upon which they rely, but insist that the trust which they would enforce, and for the violation of which they seek damages, is a trust *ex maleficio*, or, a constructive trust, arising from the fraudulent conduct of Mrs. Orth subsequent to the execution of the will.

The position of counsel is stated by them in a quotation, supplemented by the authorites they cite, which we take from their brief:

"Where a person, knowing that a testator, in making a disposition in his favor, intends it to be applied for purposes other than his own benefit, either expressly promises, or by silence implies, that he will carry the testator's intention into effect, and the property is left to him upon the faith of that promise, or undertaking, it is in effect a case of trust; and in such a case the court will not allow the devisee to set up the statute of frauds—or rather the statute of wills, by which the statute of frauds is now, in this respect, superseded; and for this reason the devisee, by his conduct, has induced the testator to leave him the property; and, as Lord Justice Turner says, in *Russell* v. *Jackson,* no one can doubt that, if the devisee had stated that he would not carry into effect the intentions of the testator, the disposition in his favor would not have been found in the will. But in this the court does not violate the spirit of the statute; but for the same end, namely, prevention of fraud, it engrafts the trust on the devise, by admitting evidence which the statute would in terms exclude, in order to prevent

Orth *et al.* v. Orth *et al.*

the party from applying the property to a purpose foreign to that for which he undertook to hold it." (1636) *Rockwood* v. *Rockwood*, 1 Cro. Eliz. 164; (1678) *Chamberlaine* v. *Chamberlaine*, Freeman Ch. 34; (1684) *Thynn* v. *Thynn*, 1 Vern. 295, 296; (1689) *Devenish* v. *Baines*, 1 Ch. Prec. 3; (1705) *Oldham* v. *Litchford*, 2 Vern. 506; (1747) *Drakeford* v. *Wilks*, 3 Atk. 539; (1748) *Reech* v. *Kennegal*, 1 Ves. Sr. 122, 123; S. C. C. 1 Amb. 67, 1 Wils. 227; (1796) *Barrow* v. *Greenough*, 3 Ves. Jun. 151, 152; (1798) *Byrn* v. *Godfrey*, 4 Ves. Jun. 6, 10; (1804) *Stickland* v. *Aldridge*, 9 Ves. Jun. 516; (1812) *Paine* v. *Hall*, 18 Ves. Jun. 475; (1813) *Chamberlain* v. *Agar*, 2 Ves. & B. 259; (1836) *Podmore* v. *Gunning*, 7 Sim. 644; (1852) *Russell* v. *Jackson*, 10 Hare 198, 204, 211; (1855) *Wallgrave* v. *Tebbs*, 2 Kay & J., 313, 321-2; (1856) *Tee* v. *Ferris*, 2 Kay & J. 357; (1861) *Moss* v. *Cooper*, 1 J. & H. 352, 366; (1869) *Jones* v. *Badley*, L. R. 3 Eq. 635, 652; (1869) *McCormick* v. *Grogan*, L. R. 4 Eng. & I. Appls. 82; (1870) *Springett* v. *Jenings*, L. R. 10 Eq. 487, 495; (1878) *Rowbotham* v. *Dunnett*, 8 Ch. Div. 430, 436; (1884) Boyes Case, 26 Ch. Div. 531, 535; (1826) Owing's Case, 1 Bland. 370; (1832) *Hoge* v. *Hoge*, 1 Watts 163, 215, 216; (1868) *Barrell* v. *Hanrick*, 42 Ala. 60, 73; (1870) *Caldwell* v. *Caldwell*, 7 Bush 515; (1874) *Dowd* v. *Tucker*, 41 Conn. 197; (1884) *O'Hara* v. *Dudley*, 95 N. Y. 403; (1888) *Gilpatrick* v. *Glidden*, 81 Me. 137; (1890) *Graves* v. *Graves*, 9 N. Y. Sup. 145; (1890) *Ragsdale* v. *Ragsdale*, 8 S. R. 315; (1892) *Larmon* v. *Knight*, 29 N. E. Rep. (Ill. Sup.) 1116; *Gaither* v. *Gaither*, 3 Md. Ch. 158, 160; *Church* v. *Ruland*, 64 Pa. St. 432; *Vreeland* v. *Williams*, 32 N. J. Eq. 734; *Glass* v. *Hulbert*, 102 Mass. 24, 39, 40; Browne St. Frauds, p. 3, section 93;

Orth *et al. v.* Orth *et al.*

*Towles* v. *Burton,* Rich Eq. Cases, 146; *Jones* v. *McKee,* 3
Pa. St. 496, 497, 6 Pa. St. 425; *Schultz Appeal,* 80 Pa. St.
396; *Williams* v. *Fitch,* 18 N. Y. 546; *Campbell* v.
*Brown,* 129 Mass. 23, 26; *Socherr's Appeal,* 104 Pa. St.
609; *Piper* v. *Hoard,* 107 N. Y. Rep. 67, 82; *Richardson*
v. *Adams,* 10 Yerg. 273; *Hooker* v. *Axford,* 33 Mich.
453; *DeLaurencel* v. *DeBoom,* 48 Cal. 581, 585; *Ken-
nedy* v. *Kennedy,* 2 Ala. 571; *Brook* v. *Chappell,* 34
Wis. 405; *Thomson's Lessee, etc.,* v. *White,* 1 Dallas
424; *Cox* v. *Arnsmann,* 76 Ind. 210, 212, 213; *Browne*
v. *Browne,* 1 Har. & J. 430.

If the position so assumed were correct, and if the
authorities cited could be held to apply, under the
the statutory provisions in this State concerning wills,
trusts, and frauds, questions upon which we now
venture no opinion, it is, nevertheless, true that, upon
the allegations of any paragraph of the complaint, the
letter is read to define the limits and character of the
trust. It is from the letter that the subject of the trust
insisted upon is to be taken; it is from the letter that
the objects of the trust must be learned; it is from the
letter that the time and manner of performance of the
trust shall be determined, if at all. No promise of
Mrs. Orth to her husband is alleged which did not
have reference to his wishes, as expressed in the letter.
No promise of Mrs. Orth to William is alleged, which
did not have reference to the wishes of his father as
expressed in the letter. The alleged promises to Wil-
liam, after the death of his father, however, do not con-
stitute an element in the creation of a trust, if a trust
was created, but, from the standpoint of the appel-
lants, may, possibly, be considered in determining
whether Mrs. Orth violated the alleged promises to
her husband.

The important question, involving the letter, is as

we have said, that it must be accepted as defining the scope of the trust claimed. The oral promises constituting the alleged fraud, the essence of the trust *ex maleficio*, considered apart from the letter would be meaningless, since those promises were but generally to carry out the wishes expressed in the letter. The alleged oral promises, without the letter, do not define the extent of the property to be regarded as the subject of the trust, nor the interest to be held for the several alleged beneficiaries, nor the time when the trust obligations should be discharged. In a word, there was nothing definite, in the conversation alleged, as to any element of a trust, unless, possibly, it was as to the persons hoped to be benefited. If we are correct in our conclusions that the letter raises no trust, and does not limit or qualify the absolute devise and bequest to Mrs. Orth; if it gives to the appellants no legal or equitable interest in the property, and does not supply the alleged trust, as appellants expressly affirm in their able briefs; and if it must be looked to as defining the trust claimed to arise from the alleged fraud of Mrs. Orth, we find that the same uncertainty and indefiniteness attends the alleged trust *ex maleficio* with the letter as without it. We apprehend that authority should not be required to support the proposition that a trust, whether declared or arising from conduct, which does not, with reasonable certainty, point the essential elements of a trust, is no trust at all.

The rule stated by Lewin, page 56, is: "Nor will the trust be executed if the precise nature of the trust cannot be ascertained." We do not understand the appellants to maintain that, as a rule of equity, Mrs. Orth should have been punished, or that her children shall now be punished, to the extent of giving up all of the property devised, because of her fraud or their

fraud. Nor is it more reasonable that, because of fraud, if such it be, without being able to ascertain and define the nature and extent of the trust which the testator may have had in mind, a court of equity should affix the punishment at a sum equal to one-third of the property devised, and confer it upon William's heirs. If we are unable to ascertain the nature and extent of the trust intended, we are powerless to enforce it, and are unauthorized to gauge it to meet the ordinary rules of equality. As already indicated, the letter creates no trust; the parol promises create no trust; and the letter and the promises together, so far from creating a trust, but constitute the promise to perform in the future a duty neither legal nor equitable. Does this breach of duty work such fraud and injustice as to require that equity shall construct a trust in behalf of the heirs of the testator? If it does, equity will be required, contrary to the views of the appellant, and contrary to our view of the effect of the letter, to go to the letter, and from it frame the terms and conditions of the trust, and supplement them with the oral promise creating it, and engraft both upon the will to its overthrow. But we are not willing to concede that the fraud is such as to raise a trust *ex maleficio.* Such a trust, in its very nature, implies the absence of an intention on the part of the parties to create a trust by their own expression; for it would be but to repeal the statute of trusts, R. S. 1894, section 3391, forbidding the creation by parol, of a trust concerning lands, to permit the parties, after declaring a parol trust and violating it, to then plead that violation as the fraud calling for the equitable construction of that particular trust. "Constructive trusts include all those instances in which a trust is raised by the doctrine of equity for the purpose of working out justice in the most efficient manner, where there is *no*

*intention* of the parties to create a relation, and in most cases contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal declaration of the trust." 2 Pomeroy's Eq. Jur., section 1044; Perry Trusts, section 166; *Pillow* v. *Brown,* 26 Ark. 240; *Hollingshead* v. *Simms,* 51 Cal. 158; *McLane* v. *Johnson,* 43 Vt. 48; *Thompson* v. *Thompson,* 16 Wis. 94; *Collins* v. *Collins,* 6 Lansing 368; *Griffith* v. *Godey,* 113 U. S. 89; Lewin Trusts, p. 180, note 1; *Mescall* v. *Tully,* 91 Ind. 96; *Wright, Gdn.,* v. *Moody,* 116 Ind. 175.

There are, perhaps, cases where parol trusts, ineffectual under the statute, have been procured by such fraud and deceit, as that equity will grant relief for the fraud without regard to the declared trust; but such cases do not proceed upon the idea that equity enforces the trust which is inhibited by the statute; but rather upon the idea that equity constructs a trust. If Mrs. Orth, by fraud, had procured the execution of the will in this case, equity would have held her a trustee for the benefit of those entitled by law to the property. Possibly, if the testator had, after the execution of his will, manifested a desire to create a specific legal trust in behalf of his children, and Mrs. Orth had, by fraud, dissuaded him, equity would have ridden over the fraud and established a trust of the terms of such legal trust. Here we have no showing that Mrs. Orth procured the will to be written in the present form, nor have we allegations of an intention on the part of the testator, subsequent to the execution of the will, to execute another and different will, including specifically or generally a trust of the character of that here claimed. Nor have we allegations of a desire on his part to execute any valid separate instrument declaring such a trust. It is alleged generally that Mrs. Orth "dissuaded the said Godlove

from making changes in his said will in favor of the said William M. Orth, or making other provisions for him, which he would otherwise have done," but it is nowhere alleged that the testator expressed a desire to, and was by fraud dissuaded from making a trust, such as that here sought to be constructed upon equitable rules. While the complaint is probably subject to the objection of appellees' counsel, that it does not allege the acts constituting any fraud claimed to have been exercised, we need not condemn the pleading on that ground; but, giving the pleading the most favorable construction in behalf of the appellants, the fraud of Mrs. Orth consisted in failing to comply with the requests contained in the letter, having promised her husband that she would comply with them. This, we say, is not such fraud as equity would accept as sufficient to require the construction of the trust here insisted upon. In 27 Am. and Eng. Ency. of Law, page 52, it is said: "There is a sharp conflict among the authorities as to what constitutes such fraud as will justify the admission of parol evidence to establish a trust in favor of the grantor. The earlier English cases were very liberal in admitting such evidence; but the current of modern authority is to the effect that parol evidence is not admissible to show an agreement to hold property in trust where it is conveyed by a deed absolute on its face, unless the instrument was obtained by fraud or was made absolute by mistake. In other words, while the refusal to execute or acknowledge such trust may constitute fraud in a certain sense, it is not such fraud as will render parol evidence admissible to establish the trust. Any other rule would make the Statute of Frauds practically ineffective. But where there is fraud in obtaining the conveyance, or in the means used to secure its execution in the particular form in which it is drawn, or

where, by accident or mistake, it fails to express the real intention of the parties, parol evidence may be admitted for the purpose of affording relief to the injured party." To these propositions, many authorities are cited.

In *Jackson* v. *Myers*, 120 Ind. 504, a suit to enforce a parol promise to convey lands, it was said: "Conceding that he was morally bound to execute a conveyance without a demand therefor, his failure so to do would not constitute fraud. To so hold would be to abolish all distinction between fraud and breach of contract." In *Fouty* v. *Fouty*, 34 Ind. 433, a suit for like purpose, it was said: "Representations upon which fraud can be predicated must be of an existing fact, or of a fact alleged to exist, and not a mere promise to do something afterwards." *Richter* v. *Irwin*, 28 Ind. 26, presented a like question, and was decided in the same way. So in *Peterson* v. *Boswell*, 137 Ind. 211.

But it is insisted by appellants that there is a distinction between deeds and wills as to the fraud necessary to construct a trust. It is probably true, upon the English cases, but where a testator has, by his will, made an absolute devise, and, subsequently, has formulated, in writing or by parol, a trust which he desires to engraft upon such devise, or desires to make a new will expressing such trust, and is, by the fraudulent representations and promises of the devisee, prevented, or wrongfully dissuaded from doing so, equity would construct that trust and deny the devisee the fruits of the fraud perpetrated. This may be true as to a will, but could not be true as to a deed, because, in the first, such trust can be engrafted, and in the last, all control has passed from the grantor. We have already shown that we have here no case parallel to that of the testator just supposed, nor have we any

reasons for concluding that the same conduct following the execution of a will should be more effective as a fraud and in raising a trust *ex maleficio*, than if it had been exerted to procure the execution of a deed, and is followed, as in the case of the will, with the mere omission or refusal to execute the parol promise. That the parol promise of one to convey to another, in the event of a conveyance to him, will not, upon refusal to comply, take the case out of the statute of trusts, has frequently been decided by this court. *Peterson* v. *Boswell, supra; Fouty* v. *Fouty, supra; Montgomery* v. *Craig,* 128 Ind. 48; *Pearson* v. *Pearson,* 125 Ind. 341; *Wright* v. *Moody, supra; Mescall* v. *Tully, supra; Rooker* v. *Rooker, Gdn.,* 75 Ind. 571; *Irwin* v. *Ivers,* 7 Ind. 308.

In *Sands* v. *Thompson,* 43 Ind. 18., on page 28, this court quotes with approval the following extract from Browne on the Statute of Frauds: Section 439. "The fraud against which equity will relieve, notwithstanding the statute, is not the mere moral wrong of repudiating a contract actually entered into, but which, by reason of the statute, the party is not bound to perform for want of its being in writing. This was early laid down by Lord Macclesfield, chancellor, in a case arising upon a promise of a defendant, about to marry, that his wife should enjoy all her own estate, to her separate use after the marriage, which promise, as one made 'upon consideration of marriage,' could not regularly be enforced. His Lordship declared that, 'in cases of fraud equity should relieve, even against the words of the statute, as if an agreement in writing should be proposed and drawn, and another fraudulently and secretly brought in and executed in lieu of the former; in this, or such like cases of fraud, equity would relieve; but where there was no fraud, only relying upon the honor, word, or promise of the defend-

ant, the statute making those promises void, equity would not interfere.'" *Irwin, Admr.,* v. *Hubbard,* 49 Ind. 350, see p. 355; *Hayes* v. *Burkam,* 51 Ind. 130; *Mescall* v. *Tully, supra; Wallace, Admr.,* v. *Long, Gdn.,* 105 Ind. 522; *Green* v. *Groves,* 109 Ind. 519; *Pearson* v. *Pearson, supra; Stonehill, Exr.,* v. *Swartz,* 129 Ind. 310.

Upon the assumption that the letter, with the parol promise to comply with the wishes therein expressed, constitutes a contract to provide for William M. Orth, by the will of Mrs. Orth, the case of *Wallace* v. *Long, supra,* is pertinent, not only upon the question of fraud, but also upon the question of the recovery of damages by his heirs for a violation of any such contract. In that case, a child had gone into the family of Fette to live with and as a member of such family, upon the parol promise of Fette that if she would so live with his family during the lives of himself and his wife, "they would treat and deal with and towards her as their child; they would make her their heir, and, at their death, or at the death of the survivor of the two, they would will, bequeath, and give her the entire estate of which they were possessed." She remained in the family, complying with her part of the contract until Fette and wife had both died; they having made no provision, by will or otherwise, for the child. This court, speaking by Mitchell, J., said: "The evidence in this case tends to support the view that it was the purpose of the intestate to make provision for the plaintiff's ward by will, may be conceded, but as the agreement to do so was never manifested in writing, signed by her, and as it involved an agreement for the sale of real estate, and for the transfer of personal property exceeding in value $50.00, such agreement was subject to the operation of the statute of frauds, equally with all other agreements for like sales. Be-

cause the agreement was not withdrawn from the operation of the statute by part performance, it can not be specifically enforced, neither can it be the foundation of an action for damages."

So, with relation to the obligation supposed to exist from the letter and parol promise to assist William from time to time, and to convey to William's daughter the house and lot in which he lived with his family. However, as to these elements of the alleged promises, there is no charge of violation by Mrs. Orth, and should be considered neither as supplying an element in the alleged fraud, nor of the claim for damages.

Another line of decisions in this State is probably violated by the claim of the appellants, and that is that equity will not enforce half of a mere volunteer, an executory parol trust. *Noe* v. *Roll*, 134 Ind. 115; *Peterson* v. *Boswell, supra; Stonehill* v. *Swartz, supra; Pearson* v. *Pearson, supra; Wright* v. *Moody, supra; Gaylord* v. *City of Lafayette*, 115 Ind. 423; *Tescall* v. *Tully, supra; Dunn* v. *Dunn*, 82 Ind. 42; *Fouty* v. *Fouty, supra; Irwin* v. *Ivers, supra*. If many of these cases were correctly decided, the case falls within the rule suggested.

However, we do not rest our decision upon this suggestion, but adhere to the rules which directly affect the principal questions in the case.

The judgment of the circuit court is affirmed.

OPINION ON PETITION FOR REHEARING.

HACKNEY, J.—One contention on behalf of the appellants is that at common law a parol trust in personal property was permitted, and that as our statute of trusts relates to real estate alone they have maintained their claim to a trust in the personal estate of the testator, alleged to have been of the value of

$100,000.00. It may be conceded that, at common law, a trust in personal property may be created by parol. Bispham Eq., section 63; 1 Perry Trusts, section 86; Lewin Trusts, section 53; Hill Trustees, section 57. Our statute of trusts and powers probably does not, deny the common law rule in this respect.

But in this case, the controversy is as to whether the testator, who made a plain and unequivocal devise of his personal estate to his wife, did, in any manner, not forbidden by law, revoke that devise and create a new disposition of said estate. Revocation cannot be made except by intentionally destroying the will, or by the execution of a writing, subscribed and attested in manner as required in the execution of wills. R. S. 1894, se▓▓▓▓▓▓29. Certainly a partial revocation or an amer▓▓▓▓▓▓ way of codicil, falls within this statutory rule. The rule with relation to precatory trusts, fortified by the authorities cited in the original opinion, recognizes no distinction between real and personal property. The rule which denies force to language, relied upon to cut down an unequivocal disposition of property, unless it clearly and unmistakably discloses the testator's intention to do so, admits of no distinction between devises and bequests. The rule which forbids evidence in parol to contradict instruments of writing knows no difference between writings as to real and those as to personal property. To our minds it seems clear that no question arises in this case as to the power to create a trust in personal property by parol. The question is as to a method of destroying the force of a valid testamentary disposition of such property.

If no will existed it is doubtful if the letter and the promise of Mrs. Orth, as to the personal property, would avoid the statute of frauds and perjuries. R. S.

1894, section 6635; *Wallace, Admr.,* v. *Long, Gdn.,* 105
Ind. 522.   But of this we need not decide.

It is further contended that the rule that one,
occupying a fiduciary relation to another and obtain-
ing an advantage by reason of that relation, is pre-
sumed to have obtained that advantage fraudulently,
applies in this case.   We are not prepared to sanction
the doctrine that a devise to the wife by her husband
is presumptively fraudulent, and that therefore equity
will charge the property with a trust in favor of those
who may stand in the relation of heirs.   The rule
stated by the learned counsel for appellants exists,
but it has never been applied, so far as our observa-
tion and researches have disclosed, to the case of a
testamentary provision by a husband for his wife, in
the absence of fraud, undue influence, or some positive
advantage taken to induce the husband, against his
free will, to make such provision.   That a man shall
make liberal provision for his wife is not unnatural,
but is a duty.   That Godlove S. Orth should have
given his whole property, in his financially embar-
rassed condition, to his wife, in the hope that, by
prudence and careful management, and the disposi-
tion of her separate property, she might save from
the wreck something, first of all, for her maintenance,
was not unnatural nor suggestive of undue influence
or overreaching.   See *Montgomery* v. *Craig,* 128 Ind. 48.

The questions to which we have referred were not
argued upon the original hearing, nor was the further
contention that the trust sought to be enforced was
such as the statute of trusts and powers excepted
from its operation as a constructive or implied trust.
The latter contention we regard as in conflict with the
position originally assumed, as disclosed by our
former opinion.   We do not, therefore, consider that
contention.

Orth *et al. v.* Orth *et al.*

Having again considered the questions originally passed upon, and finding no sufficient reason to reverse the conclusion then reached, the petition for a rehearing is overruled.

CONCURRING OPINION.

HOWARD, J.—I concur in the decision reached by the court in this case. I think the record shows that the testator, in devising his property to his wife, did not thereby create a trust in favor of any of his children; but that he gave his property, without reservation, to her, relying upon her judgment and discretion to do with it as might seem best. He indicated to her what he thought would be best; but the discretion to act in the matter was wholly left to her. It is evident that he was not clear in his own mind as to what should be done; the future might make that plain, and he left the matter in her hands, asking her, as she promised, to do what should be right when the time came for her to act. That she might be able to exercise this discretion, the property was given absolutely to her. There was no trust imposed upon it.

In so far, however, if at all, as the opinion holds, that one who, without consideration paid, receives title to real estate, under promise to reconvey, may afterwards refuse to convey, and justify such refusal under cover of the statute against frauds, I must dissent. There is a well recognized exception to the application of the statute, namely, that one cannot seek to justify his own fraud by a plea of the statute against fraud. A court of equity will not hear him make such a plea. Attempts to retain possession of property received with a promise to reconvey, will also be overthrown, on the ground that the convey-

VOL. 145—14

ance was without consideration. In any event, a court of equity will seek to do justice within the lines of law, and will not sanction so gross a provision of a statute enacted to prevent injustice. See *Baird* v. *Baird* (N. Y.), 40 N. E. Rep. 222; *Davis* v. *Whitehead*, L. R. (1894), 2 Ch. Div. 133. Also, 6 Chicago Law Jour., 562, 720.